# COMMONWEALTH OF VIRGINIA

## v.

# ALLSTATE BONDING COMPANY, ET AL.

Record No. 921704

September 17, 1993

Present: All the Justices

*Malcolm McL. Doubles (Donald S. Caldwell*, on briefs), for appellant.

*Harry F. Bosen, Jr.*, for appellee Allstate Bonding Company.

*Melissa W. Friedman (Anthony F. Anderson*, on brief), for appellee A-1 Bonding Company.

CHIEF JUSTICE CARRICO delivered the opinion of the Court.

In this case, the trial court refused to forfeit the bail bonds of six defendants who failed to appear in general district court to answer criminal charges, as required by the terms of their bonds.[1] We awarded the Commonwealth this consolidated appeal to review the trial court's action.

---

[1] The Commonwealth also appeals from the denial of a motion to forfeit the bond of another defendant, namely, Travis McGuire. However, the Commonwealth concedes that the motion should have been denied, but says that it disagrees with "the reasons stated by the trial court." This concession renders moot any question concerning McGuire's bond, despite the Commonwealth's disagreement with the reasons for the trial court's denial of the forfeiture motion, and we will not consider the McGuire matter further.

Allstate Bonding Company (Allstate) was surety on the bonds of five of the six defendants: Gary E. Ball, II, charged with breaking and entering and trespassing; Robert T. Bardeau, charged with possession of cocaine; Arnold Earl Nelson, charged with grand larceny and uttering; Felipe Garcia Mendoza, charged with statutory rape; and Billy Ray Green, charged with driving on a suspended operator's license. A-1 Bonding Company (A-1) was surety on the bond of the remaining defendant, Aldon Ellis, who was charged with possession of crack cocaine with intent to distribute.

It was stipulated below that it is the "practice and policy" of the office of the Commonwealth's Attorney for the City of Roanoke to move for forfeiture of a bail bond at the time a defendant fails to appear. However, the record shows that although Ball failed to appear on September 21, 1988, as his bond required, it was not until December 13, 1991, three years, two months, and twenty-two days later, that notice was issued requiring Allstate to show cause why its bond on Ball should not be forfeited.

Similarly, Bardeau failed to appear on November 3, 1988, but notice to Allstate to show cause was not issued until December 13, 1991, approximately three years and one month later. Nelson failed to appear on October 11, 1989; notice to Allstate to show cause was issued December 13, 1991, or about two years and two months later. Mendoza failed to appear on September 4, 1990; notice to Allstate to show cause was issued May 21, 1992, one year, eight months, and seventeen days later. Green failed to appear on November 1, 1990; notice to Allstate to show cause was issued December 16, 1991, thirteen and one-half months later. Ellis failed to appear on August 30, 1989; notice to A-1 to show cause was issued December 11, 1991, or two years, three months, and twelve days later.

The general district court ruled that bond should be forfeited in all six cases. Allstate and A-1 appealed the district court's rulings to the circuit court. After a hearing, the circuit court ruled in each case that the delay between the defendant's failure to appear and the issuance of the notice to the surety to show cause was not "reasonable notice as called for under [Code § 19.2-143] under all of the circumstances then existing." By a separate judgment order entered in each case, the circuit court denied the Commonwealth's motion to forfeit bond.

■ Code § 19.2-143 provides, in pertinent part, as follows:

> When a person, under recognizance in a case, . . . fails to perform the condition of appearance thereof, if it is to appear before a court of record, or a district court, a hearing shall be held *upon reasonable notice* to all parties affording them opportunity to show cause why the recognizance or any part thereof should not be forfeited. If the court finds the recognizance or any part thereof should be forfeited, the default shall be recorded therein, unless, the defendant . . . is brought before the court within sixty days of the findings of default.

> If the defendant . . . appears before or is delivered to the court within twelve months of the findings of default, the court shall remit any bond previously ordered forfeited by the courts, less such costs as the court may direct.

(Emphasis added.)

Allstate and A-1 (collectively, the sureties) contend the italicized language of Code § 19.2-143 imposes upon the Commonwealth the duty of giving a surety reasonable notice not only of a bond forfeiture hearing but also of a defendant's initial failure to appear. The sureties then assert that notice of nonappearance given from thirteen months to more than three years after the fact is unreasonable per se.

Citing *Heacock v. Commonwealth*, 228 Va. 235, 321 S.E.2d 645 (1984), the sureties argue that they have "a property interest in the amount of the bond" and that this interest is entitled to due process protection. Allstate says that "[b]alancing the interest . . . the surety has in the amount of the bond against the magnitude of governmental interests involved requires that a Virginia surety be given notice of nonappearance no more than 30 days after the fact." A-1 says that the Commonwealth should be required to notify a surety of a defendant's "failure to appear within one to seven days" after the nonappearance.

Such prompt notice of nonappearance is essential, the sureties maintain, to enable them to locate a defendant before the "trail . . . gets cold" and to provide them an opportunity to avoid forfeiture by producing a defendant within the sixty-day and twelve-month grace periods allowed under Code § 19.2-143. Delayed notice renders this statutory opportunity meaningless, the sureties say, resulting in the

denial of the due process protection to which their property interest in the bonds is entitled.[2]

We disagree with the sureties. In the first place, the notice required by Code § 19.2-143 is limited to "a hearing . . . to show cause" why a bail bond should not be forfeited. The statutory language cannot be stretched to include a requirement for notice to a surety of the nonappearance of a defendant. Nor can the circumstances of a particular case serve to convert the requirement into one including such notice.

Furthermore, the terms of the bonds in question negate any obligation on the Commonwealth's part to provide a surety with notice of a defendant's nonappearance. As part of the conditions of release and recognizance, a defendant promises to appear at a specified time and place and at other times and places to which his case may be rescheduled, continued, transferred, certified, or appealed. These conditions are incorporated by reference into the bond, defining the obligation assumed by the surety.

As part of this obligation, the surety undertakes to guarantee the actual appearance of a defendant when and where his presence is required. Necessarily implicit in that undertaking is the dual burden on the part of the surety of taking some action to secure the defendant's appearance and of ascertaining whether the action was successful. Having failed to satisfy this burden in the present case, the sureties are in no position to complain that the Commonwealth failed to notify them of the defendants' nonappearance.

Indeed, *Heacock*, cited by the sureties, displays the lack of merit in their position. There, finding that the bond forfeiture hearing conducted by the trial court "was not constitutionally sufficient" because the surety was not provided the opportunity to confront and cross-examine witnesses, *id.* at 242, 321 S.E.2d at 649, this Court reversed the judgment in the Commonwealth's favor and remanded the case for a new forfeiture hearing, *id.*

However, during an analysis of the situation in *Heacock*, the Court distinguished between a bail revocation hearing the trial court

---

[2] Allstate cites a number of decisions from other jurisdictions which, it says, support the proposition that before liability may be imposed under a bail bond, "the surety must be furnished prompt and timely notice of the initial nonappearance of the defendant for whom the bond has been posted." However, the decisions either do not stand for the proposition for which they are cited or they are based upon statutes that, unlike Va. Code § 19.2-143, provide for notice of nonappearance "forthwith" or within a prescribed number of hours or days.

had conducted, where the liberty of the defendant was at stake, and a later bond forfeiture hearing, where the cash recognizance posted by the surety was at stake. *Id.* at 239-40, 321 S.E.2d at 647-48. The Court stated that the surety had ''no viable due-process complaint about the proceeding to revoke bail'' because ''[h]e was not a party to that proceeding and, accordingly, *had no standing to challenge lack of notice* and no right to call or cross-examine witnesses.'' *Id.* at 240, 321 S.E.2d at 648 (emphasis added).

■ Although the interest of the surety may differ in the two situations, we see no difference between the nonappearance of a defendant for trial on the one hand and a hearing to revoke bail on the other. If, as *Heacock* teaches, a surety has no standing to challenge lack of notice of a defendant's bail revocation hearing, we can perceive no reason why a surety would have standing to challenge lack of notice of a defendant's initial nonappearance.

A-1 makes the additional argument that the Commonwealth is estopped from seeking forfeiture of the bond A-1 executed for the appearance of Aldon Ellis. The argument here is that because a bail bond constitutes a contract between the parties and ''the motion for forfeiture is a breach of contract action . . . not brought in the Commonwealth's governmental or sovereign capacity, . . . the doctrine of estoppel can be applied as a defense to the contract action.'' A-1 then says that estoppel should be applied in this case because it relied upon the ''practice and policy'' of the office of the Commonwealth's Attorney for the City of Roanoke to move for forfeiture of a bail bond at the time a defendant fails to appear.

A-1 cites *Wiecking v. Allied Medical Supply Corp.*, 239 Va. 548, 391 S.E.2d 258 (1990), for the proposition that ''[t]he sovereign is as liable for its contractual debts as any citizen would be, and that liability may be enforced by suit in the 'appropriate circuit court' . . . if proper and timely proceedings are taken.'' *Id.* at 553, 291 S.E.2d at 261. But the holding in *Weicking* is a narrow one, limited to the situation where ''the state contracts for goods or services, receives the benefit of the contract, and then refuses to honor its obligations,'' *id.* at 551, 391 S.E.2d at 260, a situation quite different from the circumstances presented here.

■ Furthermore, A-1 cites no precedent for its argument that the Commonwealth contracts in a proprietary, rather than a governmental, capacity and is subject to the doctrine of estoppel when it accepts a bail bond from a surety for the release of a defendant from custody. We decline to establish the precedent here.

For the reasons assigned, we hold that the trial court erred in refusing to grant the Commonwealth's motions for forfeiture in the six cases under consideration. For this error, we will reverse, but we will not enter final judgment. A-1 "submits that even if this Court deems it appropriate to reverse the Circuit Court, it should remand the case rather than enter final judgment."

A-1 cites the portion of Code § 19.2-143 which provides that "[i]f the court finds the recognizance . . . should be forfeited, the default shall be recorded therein, unless, the defendant . . . is brought before the court within sixty days of the findings of default." A-1 then insists that "the case must be remanded for passage of that sixty day period." The Commonwealth makes no response to A-1's argument.

■ We think A-1 is correct. Accordingly, we will remand the matter with directions to the trial court to find that the six bonds in question should be forfeited and to record the default in each case unless the particular defendant is brought before the court within sixty days of the finding of default.

*Reversed and remanded.*