120

## CIRCUIT COURT OF THE CITY OF NORFOLK

Derrick D. Burroughs

 v.

Board of Visitors of
Norfolk State University
and David A. Von Moll,
Comptroller of Virginia

 Case No. (Law) L04-1039

Ryan E. Alston

 v.

Board of Visitors of
Norfolk State University
and David A. Von Moll,
Comptroller of Virginia

 Case No. (Law) L04-771

Jack S. Bush, Jr.

 v.

Board of Visitors of
Norfolk State University
and David A. Von Moll,
Comptroller of Virginia

 Case No. (Law) L04-1118

 October 18, 2004

By Judge Joseph A. Leafe

The parties came before the court on September 21, 2004, to argue the merits of defendant's plea in bar. The Court has heard oral arguments, and the parties have submitted supplemental briefs.

"A Plea in Bar is a defensive pleading that reduces the litigation to a single issue," *Cooper Indus., Inc. v. Melendez*, 260 Va. 578, 594, 537 S.E.2d 580, 590 (2000) (quoting *Kroger Co. v. Appalachian Power Co.*, 244 Va. 560, 562, 422 S.E.2d 757, 758 (1992)), "which, if proven, creates a bar to the plaintiff's right of recovery." *Id.* (quoting *Tomlin v. McKenzie*, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996)). The party asserting a Plea in Bar carries the burden of proof. *Id.* For the purposes of a Plea in Bar, the facts stated in the plaintiff's motion for judgment are deemed to be true. *See Glascock v. Laserna*, 247 Va. 108, 109, 439 S.E. 2d 380, 380 (1994).

## Facts

The three plaintiffs, Derrick D. Burroughs, Ryan E. Alston, and Jack S. Bush, Jr., bring this suit against the Board of Visitors of Norfolk State University and the Comptroller of Virginia claiming each plaintiff had a contract with Norfolk State University (NSU) to be an assistant football coach.

NSU hired Rick Comegy as its new head football coach, but later Comegy decided to renege on his agreement with NSU and remain as a coach in Tuskegee, Alabama. The events giving rise to this suit occurred after Comegy agreed to take the position of football coach at NSU and prior to his decision to remain in Alabama. Essentially, after Comegy was introduced as NSU's new head football coach, he began to make arrangements for assistant coaches. Comegy faxed a document signed by himself and Orby Moss, the Athletic Director at NSU, to each plaintiff. Each plaintiff signed the document and sent it back to either Comegy or Moss. NSU claims that these documents are not valid contracts. Plaintiffs argue that the signed documents were valid contracts and each sues NSU for breach of contract.

## Actual or Apparent Authority

Defendant's first argument is that there are no valid contracts between Plaintiffs and NSU. Defendant claims that Moss and Comegy did not have actual or apparent authority to bind NSU to a contract. It is uncontested that the legislature established Norfolk State University as a Virginia corporation

and gave the Board of Visitors the legal authority to enter into contracts. Va. Code § 23-174.1; Va. Code § 23-174.5. The Board of Visitors delegated the authority to enter into contracts on behalf of NSU to President Marie McDemmond. *See Norfolk State University Administrative and Professional Faculty Handbook* at 12. The President of NSU, in turn, has the power to delegate certain authority regarding appointments to vice presidents and others. *Id.*

In this case, Defendant argues that, while the Board of Visitors delegated authority to President McDemmond and she delegated authority to Vice President of Finance and Business, Edward Jolley, she did not delegate authority to enter into a contract on behalf of NSU to either Moss or Comegy. In addition, Defendant notes that based on the blank line reserved for the signature of Vice President Jolley, it was obvious that the document signed by Moss and Comegy had not been authorized by NSU. Defendant believes that Plaintiffs should have inquired into the hiring practices at NSU. Upon inquiry, Plaintiffs would have learned that the President of NSU must give final approval for the hiring of all coaches and that Moss and Comegy did not have the necessary authority to bind NSU to a contract. *See Richard L. Deal and Assocs., Inc. v. Commonwealth*, 224 Va. 618, 623, 299 S.E.2d 346, 349 (1983) (stating "those who deal with public officials must at their peril take cognizance of their power and its limits"). Consequently, Defendant argues that the documents signed by Moss and Comegy cannot be considered valid contracts from NSU.

It appears to the Court that Moss and Comegy both had authority to enter into contracts with Plaintiffs on behalf of NSU. The agreement letter that was authorized by President McDemmond and sent by Moss to Comegy while his contract was being finalized states "You may hire up to six full time assistants within the budget provided." Defendant's Exhibit 1. Words used by parties in a written document or contract are normally given their usual, ordinary, and popular meaning. *Winn v. Aleda Constr. Co.*, 227 Va. 304, 307, 315 S.E.2d 193, 194-95 (1984). The ordinary meaning of the word hire is to engage a person to provide services. *See Ozark Minerals Co. v. Murphy*, 51 N.E.2d 197, 201 (Ill. 1943); *Alekzich v. Industrial Accident Fund*, 151 P.2d 1016, 1018 (Montana 1944). Thus, it is clear from the letter that Comegy had the authority to hire up to six full time assistants within the budgetary limits. In addition, an e-mail sent from Moss to his secretary on January 5, 2003, anticipating Comegy's arrival indicates that Comegy had authority to hire his assistants in that it states that Moss wished to meet with Comegy "and all his assistants on their first full day." Plaintiff's Exhibit 4.

Based on a course of dealing between President McDemmond and Moss, it is evident that Moss also had legal authority to enter into contracts with Plaintiffs on behalf of NSU. Several contracts were submitted into evidence with NSU coaches and assistant coaches that are signed only by Orby Moss, as the Athletic Director, and the prospective coach. Plaintiff's Exhibit 7. No evidence other than the sworn testimony of Moss and President McDemmond was presented to indicate that Moss received President McDemmond's express approval prior to entering into each of these contracts.

In addition, the actions taken by Moss prior to Comegy's announcing that he was not coming to NSU were consistent with NSU having hired the Plaintiffs as assistant coaches. Of particular interest to the Court is the fact that, after Comegy faxed Moss a handwritten letter requesting staff contracts for his assistant football coaches, Moss drafted documents prepared on Norfolk State University letterhead, filled in the names and personal addresses of each plaintiff, and signed each of the documents before sending them to Comegy. Despite Moss' sworn testimony that he signed the documents in order to show the assistant coaches what a real contract would look like, it appears to the Court that, if these documents were truly intended as samples, as opposed to actual contracts, Moss would not have completed them with each individual's name and personal address and would not have signed each document. Thus, the Court finds that Moss and Comegy had authority to enter into contracts on behalf NSU.

## Sovereign Immunity

Defendant's second argument is that the Commonwealth, including Norfolk State University, is protected by sovereign immunity. In *Wiecking v. Allied Medical Supply*, 239 Va. 548, 551, 391 S.E.2d 258, 260 (1990), the Supreme Court of Virginia stated that "the doctrine of sovereign immunity is 'alive and well' in Virginia, as a defense to actions in tort, but . . . [that defense has never been extended] to actions based upon valid contracts entered into by duly authorized agents of the government." *Wiecking v. Allied Medical Supply*, 239 Va. 548, 551, 391 S.E.2d 258, 260 (1990) (citations omitted). The Supreme Court of Virginia stated that "the doctrine of sovereign immunity has no application in actions based upon valid contracts entered into by duly authorized agents of the government." *Wiecking*, 239 Va. at 553, 391 S.E.2d at 261.

Defendant argues that the Supreme Court of Virginia has narrowed the holding of *Wiecking* in *Commonwealth v. Allstate Bonding Co.*, 246 Va. 189, 435 S.E.2d 396 (1993). In *Allstate Bonding Co.*, the Court considered the

124

Commonwealth's motion to forfeit defendants' bail bonds. *Commonwealth v. Allstate Bonding Co.*, 246 Va. 189, 435 S.E.2d 396 (1993). Sureties on the bail bonds contested the bonds' forfeiture after defendants failed to appear on the grounds that the Commonwealth did not give reasonable notice to the sureties of defendants' failure to appear. *Commonwealth v. Allstate Bonding Co.*, 246 Va. 189, 190-93 ,435 S.E.2d 396, 397-98 (1993). In *Allstate Bonding Co.*, the Court stated that "the holding in *Wiecking* [was] a narrow one, limited to the situation where the state contracts for goods or services, receives the benefit of the contract, and then refuses to honor its obligations." *Allstate Bonding Co.*, 246 Va. at 194, 435 S.E.2d at 399.

*Allstate Bonding Co.* can be factually distinguished from this case. *Commonwealth v. Allstate Bonding Co.*, 246 Va. 189, 194, 435 S.E.2d 396, 399 (1993) (arguing that a bail bond constitutes a contract between the parties and the motion for forfeiture constitutes a breach in contract). In this case, NSU contracted for the services of assistant football coaches. NSU received the benefit of the contracts by not having to continue to search for assistant football coaches. Now NSU is refusing to honor the alleged contracts. These facts are distinguishable from *Allstate Bonding Co.* because, in *Allstate Bonding Co.*, the contract, a bail bond, was between the surety and the defendant. *Commonwealth v. Allstate Bonding Co.*, 246 Va. 189, 435 S.E.2d 396 (1993). In *Allstate Bonding Co.*, the Commonwealth was merely a third party to the contract seeking a bond forfeiture. *Id.* In that case, the Commonwealth was not a party to the original contract. *Id.* In this case, however, NSU was a party to the original contracts with the assistant football coaches. Thus, the Court finds that sovereign immunity does not protect NSU from the suits brought by Plaintiffs on their breach of contract actions.

Defendant's Plea in Bar is denied on both grounds.