## CIRCUIT COURT OF FAIRFAX COUNTY

Patriot Bank, N.A.

    v. ·

Navy Federal Credit Union

February 26, 2002

Case No. (Law) 199772

BY JUDGE JANE MARUM ROUSH

This case arises under Articles 3A and 4 of the Uniform Commercial Code, Va. Code Ann. § 8.1-101 *et seq*. At issue is whether the defendant Navy Federal Credit Union wrongfully refused to honor a cashier's check it issued.

This matter came on for a bench trial on February 14, 2002, as a *de novo* appeal from the General District Court. At that time, the Court took the matter under advisement. The Court has now carefully considered the pleadings, the applicable provisions of the Uniform Commercial Code, and the arguments of counsel. For the reasons stated below, judgment will be entered in favor of the plaintiff Patriot Bank, N.A., in the amount of $7,000.00, plus interest, costs, and attorney's fees.

### Facts

On April 4, 2001, Thomas Peeso, a member of the Navy Federal Credit Union ("Navy FCU"), obtained a cashier's check from Navy FCU in the amount of $7,000. The check was made payable to Mr. Peeso. Mr. Peeso's

account was debited for payment of the check. Mr. Peeso delivered the check to Nation's Auto Loan Center ("Nation's Auto"), a used car dealership. Mr. Peeso intended to use the check to purchase a used car for his daughter. He indorsed the check as follows: "[Peeso's Signature] Payable to Nation's Auto Loan Center."

Beneath that indorsement, was written by hand "# 180180021301" – Nation's Auto's account number at Patriot Bank.

Later, on April 4, 2001, Nation's Auto deposited the check in its account at the plaintiff Patriot Bank, N.A. Patriot Bank credited Nation's Auto's account in the amount of $7,000. Patriot Bank then submitted the check to Navy FCU for payment through the Federal Reserve System.

Navy FCU received the check on April 9, 2001. Navy FCU's policy requires all checks for $5,000 or more personally to be examined for regularity of indorsements before payment. A bank official examined the check and questioned the indorsements. Navy FCU returned the check to Patriot Bank on April 11, 2001, for the stated reason "absence of indorsement guarantee required." Mr. William Oeters, the vice president of Patriot Bank, testified that Navy FCU wanted Patriot Bank to guarantee the missing indorsement of its customer, Nation's Auto.

Several days later, on about April 18, 2001, Mr. Peeso received a telephone call from Nation's Auto. After that conversation, it was his understanding that the cashier's check was somehow "no good" and "not negotiable." Without retrieving the original cashier's check, Mr. Peeso returned to Navy FCU and asked the credit union to stop payment on the original cashier's check and issue a new cashier's check in the amount of $7,000 made payable to Nation's Auto. Although Navy FCU knew by that time that the first cashier's check had been deposited for collection at Patriot Bank and was in the collection system, Navy FCU agreed to stop payment. Navy FCU required Mr. Peeso to agree to indemnify Navy FCU for "all claims and demands that may be made upon the said credit union on account of refusing payment" of the original cashier's check. A second cashier's check was issued for $7,000 made payable to Nation's Auto.

Nation's Auto deposited the second cashier's check in a financial institution not involved in this litigation and was credited for the amount of the second cashier's check.

Shortly after April 11, 2001, Patriot Bank received the first cashier's check back from Navy FCU. Although Navy FCU returned the check for the stated reason that "*absence* of indorsement guarantee required" (emphasis added), Patriot Bank was uncertain what Navy FCU wanted guaranteed. Because Patriot Bank had no relationship with Mr. Peeso, who was not its customer, it was reluctant to guarantee his signature. Patriot Bank returned the

check to Nation's Auto. When Patriot Bank attempted to reverse the credit it had given to its customer for the first check, however, it discovered that the account was overdrawn. All attempts to contact the customer failed. Nation's Auto had apparently ceased doing business.

Patriot Bank filed suit against Navy FCU in the General District Court on July 5, 2001. In the course of the litigation, Patriot Bank learned that Navy FCU wanted the absence of the indorsement of Nation's Auto guaranteed when it returned the first check to Patriot in April. Patriot Bank then stamped the cashier's check:

CREDIT TO THE ACCOUNT OF THE WITHIN NAMED PAYEE IN ACCORDANCE WITH PAYEE'S INSTRUCTIONS ABSENCE OF INDORSEMENT GUARANTEED

and resubmitted the first check to Navy FCU in August 2001. Navy FCU refused to honor the first cashier's check when Navy FCU received it with the "absence of indorsement guaranteed." By that time, payment had been stopped on the first check, the second check had been issued and paid, and Navy FCU knew that Nation's Auto was out of business. Navy FCU stamped the first check as "refer to maker" and returned it to Patriot Bank.

### Patriot Bank's Position

Patriot Bank argues that Navy FCU wrongfully refused to honor the first cashier's check on presentment. First, Patriot Bank maintains that Nation's Auto properly indorsed the check when it wrote its account number beneath "Payable to Nation's Auto Loan Center." Second, if the account number was not an "indorsement," Patriot Bank can supply the missing indorsement of its customer. No "absence of indorsement guaranteed" is required. Third, even if Navy FCU could require Patriot Bank to guarantee the absence of indorsement, Navy FCU had no right to refuse to honor the first cashier's check when it was resubmitted in August 2001 with the requested "absence of indorsement guaranteed" language. In short, Patriot Bank argues that Navy FCU could not refuse to honor the cashier's check under the facts of this case.

### Navy FCU's Position

Navy FCU contends that it acted properly when it returned the cashier's check to Patriot Bank in order for Patriot Bank to guarantee the missing

indorsement of its customer, Nation's Auto. According to Navy FCU, it was observing prudent banking practices when it asked that Patriot Bank guarantee the absence of the indorsement of Nation's Auto. Navy FCU acknowledges that an issuer may not stop payment on a cashier's check. Navy FCU explains that it stopped payment on the first check as an accommodation to its customer, Mr. Peeso. Navy FCU maintains that, as between Mr. Peeso and Patriot Bank, Patriot Bank should suffer the loss.

*Discussion of Authority*

I. *Was the Cashier's Check Properly Indorsed by Nation's Auto Loan Center?*

Code § 8.3A-204 defines "indorsement" in part as a "signature, other than that of a signer as a maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument." A "signature" is defined as "a name . . . word, mark, or symbol executed or adopted by a person with the present intent to authenticate a writing." Code § 8.3A-401(b). Similarly, "signed" is defined as including "any symbol executed or adopted by a party with the present intention to authenticate a writing." Code § 8.1-201(39). The official comment to Code § 8.1-201(39) explains that "signed" is to be construed broadly:

> The inclusion of authentication in the definition of "signed" is to make clear that . . . a complete signature is not necessary. Authentication may be printed, stamped, or written; it may be by initials or by thumbprint. . . . No catalog of possible authentications can be complete and the court must use common sense and commercial experience in passing upon these matters. The question always is whether the symbol was executed or adopted by the party with a present intention to authenticate the writing.

Code § 8.1-201, Official Comment 39.

It is a reasonable inference from the evidence in this case that Nation's Auto wrote its account number at Patriot Bank on the cashier's check in order to authenticate the check for the purposes of deposit. As such, the Court concludes that the account number constitutes an indorsement as that term is defined in the Uniform Commercial Code.

The Court concludes that the cashier's check was properly indorsed when first presented to Navy FCU. Navy FCU should not have returned the check to Patriot Bank because of a missing indorsement.

II. *Was Patriot Bank Required to Guarantee the Absence of the Indorsement of its Customer?*

Even if Nation's Auto's account number did not amount to an indorsement, Navy FCU should not have returned the cashier's check to Patriot Bank for Patriot Bank to guarantee the missing indorsement of its customer.

Under Code § 8.4-205.1, when a customer delivers an item to a depository bank for collection, the bank becomes a holder of the item if the customer was a holder, whether or not its customer indorses the item. The depository bank warrants to collecting banks, the payor bank, or other payor, and to the drawer that the amount of the item was paid to the customer or deposited to the customer's account. The official comment to that section makes clear that "whether it [the depository bank] supplies the customer's indorsement is immaterial." Code § 8.4-205.1, Official Comment.

In light of Code § 8.4-205.1, there was no need for Navy FCU to return the cashier's check to Patriot Bank in order for Patriot Bank to guarantee the missing indorsement of its customer, Nation's Auto. Simply by submitting the check to Navy FCU for payment, Patriot Bank warranted to Navy FCU that the item was paid to Nation's Auto or deposited into Nation's Auto's account. That warranty is the functional equivalent of supplying the missing indorsement of its customer.[1] Therefore, Navy FCU should have honored the cashier's check when it was first presented to it for payment on April 9, 2001, before Mr. Peeso made any stop payment request.

III. *Could Navy FCU Stop Payment on the Cashier's Check?*

The check at issue in this case is a "cashier's check" as that term is defined in the U.C.C. It is a "draft with respect to which the drawer and the drawee are the same bank or branches of the same bank." Code § 8.3A-104(g). A customer may stop payment only on an item drawn on the customer's account. Code § 8.4-403(a). The official comments to Code § 8.4-403 make clear that a customer has no right to stop payment on a cashier's check:

> A cashier's check or teller's check purchased by a customer whose account is debited in payment for the check is not a check drawn on the customer's account within the meaning of subsection (a); hence, a

---

[1] Under prior law, the practice of stamping a check "Deposited to the Account of the Within Named Payee" was effective as the customer's indorsement. Va. Code Ann. § 8.4-205(1) (Repealed by Va. Acts 1992, c. 693).

customer purchasing a cashier's check or teller's check has no right to stop payment of such a check under subsection (a).

Code § 8.4-403, Official Comment 4.

If a bank chooses not to honor a cashier's check as an accommodation for its customer, the bank's liability is governed by Code § 8.3A-411. That section provides, in pertinent part:

> If the obligated bank wrongfully (i) refuses to pay a cashier's check or certified check, (ii) stops payment of a teller's check, or (iii) refuses to pay a dishonored teller's check, the person asserting the right to enforce the check is entitled to compensation for expenses and loss of interest resulting from the nonpayment and may recover consequential damages if the obligated bank refuses to pay after receiving notice of particular circumstances giving rise to the damages.

Code § 8.3A-411(b). The statute is intended to discourage the practice of banks refusing to honor a cashier's check as an accommodation to their customers. Code § 8.3A-411, Official Comment 1. Attorney's fees may be awarded as part of the "expenses . . . resulting from nonpayment." Code § 8.3A-411, Official Comment 2.

The issue thus becomes whether Navy FCU "wrongfully" refused to honor the cashier's check. "If the bank is not obligated to pay, there is no recovery." Code § 8.3A-411, Official Comment 3.

When a bank issues a cashier's check, it is in essence assuming the liabilities of a maker of a promissory note. Under Code § 8.3A-412, "the issuer of a note or cashier's check or other draft drawn on the drawer is obliged to pay the instrument . . . according to its terms at the time it was issued." The bank is obligated to pay the check in the same way a maker is obligated to pay a promissory note. Code § 8.3A-412, Official Comment 1. A bank may refuse to pay a cashier's check based on any defenses that the bank itself may have, such as if the bank was not paid by its customer for the check, unless the check is in the hands of a holder in due course. The bank may not, however, refuse to pay a cashier's check based on any defenses that the remitter[2] may have. Code § 8.3A-411, Official Comment 2.

In this case, Navy FCU had no defenses to the payment of the cashier's check. Navy FCU received full payment for the check when it debited Mr. Peeso's account for $7,000 upon the issuance of the check. James Marshall,

---

[2] The "remitter" is the person who purchases the cashier's check. Code § 8.3A-103(a)(11). In this case, the remitter is Mr. Peeso.

the treasurer of Navy FCU, testified that Navy FCU refused to honor the check when presented in August 2001 with the absence of Nation's Auto's indorsement guaranteed because, by that time, payment had been stopped on the first check, Nation's Auto was out of business, and the second cashier's check had been issued and paid. As discussed above, Navy FCU could not properly "stop payment" on the cashier's check. Navy FCU's other reasons for not honoring the check were defenses that properly belonged to Mr. Peeso, the remitter. A bank that issues a cashier's check may not refuse to honor the check based on defenses of the remitter.

The parties devote much argument to whether Patriot Bank was a holder in due course of the cashier's check when it submitted it for payment in August. Patriot Bank's status as a holder in due course would be relevant only if Navy FCU were asserting its own defenses to payment of the check. Because Navy FCU is asserting only the remitter's defenses, the holder in due course analysis is irrelevant.

Navy FCU conceded at trial that a bank cannot stop payment on a check under the circumstances of this case and that Navy FCU refused to honor the check as an accommodation to Mr. Peeso. Therefore, this case falls squarely within the provisions of Code § 8.3A-411.

### Conclusion

The Court concludes that Navy FCU wrongfully refused to honor the cashier's check. Navy FCU is therefore liable to Patriot Bank for the amount of the wrongfully dishonored check, as well as Patriot Bank's "expenses . . . resulting from the nonpayment." Patriot Bank introduced evidence of its attorney's fees expended in pursuing payment of the check. The Court will enter judgment in favor of Patriot Bank, N.A., against Navy Federal Credit Union in the principal amount of $7,000 plus interest on the principal amount at the legal rate beginning April 10, 2001, until paid plus attorney's fees of $5,700 and costs of $182.26.