# CIRCUIT COURT OF FAIRFAX COUNTY

Asim Khan

v.

Alliance Bank

December 22, 2009

Case No. CL-2009-14692

BY JUDGE RANDY I. BELLOWS

On December 11, 2009, this Court heard oral argument on the Plea in Bar filed by Defendant, Alliance Bank. At the conclusion of the hearing, the Court informed the parties that it would take the matter under advisement. After reviewing the parties' briefs and in light of the oral arguments made, the Court is now prepared to rule.

## I. *Background*

Plaintiff Asim Khan and his business partner, Sibtain Kazmi, members of Advantage Title and Escrow, L.L.C. ("Advantage Title"), opened a business account with Alliance Bank in November 2003. Both were signatories on the account. The parties' business relationship soured over time.

On May 12, 2009, Kazmi wrote a letter to Alliance Bank requesting that Khan be removed as a signatory from all the accounts of Advantage Title. On May 20, 2009, Khan wrote Alliance Bank a $35,000 check from the business account in exchange for a cashier's check. On May 21, 2009, Kazmi delivered an "Affidavit of Unauthorized Transaction" to Alliance Bank, stating that the $35,000 cashier's check was "fraudulently obtained." In response, Alliance Bank issued a stop payment on the cashier's check issued to Khan and re-credited the money to Advantage's account. Defendant then wrote a letter to counsel for Khan and Kazmi informing them that the funds in

the Joint Account would be interpleaded with the Court. In June 2009, Kazmi's counsel sent Alliance Bank a letter requesting that it transfer the funds pursuant to a joint agreement between the parties, which was signed by both Khan and Kazmi. Counsel's letter stated that this arrangement would "avoid the necessity of an interpleader action." The "Joint Agreement to Close Account" directed Alliance Bank to wire transfer the balance of Advantage Title's account, which included the $35,000 referenced above, to the trust account of Kazmi's attorney. Defendant wired this money pursuant to the signed instructions from Khan and Kazmi.

Khan, as an individual, now asserts claims against Alliance Bank for conversion, breach of contract, and specific performance for issuing the initial stop payment order on the $35,000 cashier's check. Asserting that the cashier's check constituted an unconditional promise of payment pursuant to Va. Code § 8.3A-106, Khan claims he is entitled to damages, interest, and attorney's fees pursuant to Va. Code § 8.3A-411.

## II. *Analysis*

### A. *Legal Standard*

"A plea in bar is a responsive pleading that reduces the litigation to a single issue, which if proven, creates a bar to the plaintiffs right of recovery." *Cooper Industries, Inc. v. Melendez*, 260 Va. 578, 594, 537 S.E.2d 580, 590 (2000) (quoting *Kroger Co. v. Appalachian Power Co.*, 244 Va. 560, 562, 422 S.E.2d 757, 758 (1992)). The party asserting the plea in bar bears the burden of proof. *Id.* When considering the pleadings, "the facts stated in the plaintiffs' motion for judgment [are] deemed true." *Glascock v. Laserna*, 247 Va. 108, 109, 439 S.E.2d 380, 380 (1994).

### B. *Findings*

The subject matter of this litigation is governed by the terms of the Uniform Commercial Code ("U.C.C."), as adopted by Virginia. The U.C.C. preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies. Va. Code § 8.1A-103, Official Comment 2. This Court finds that plaintiffs common law claims of conversion, breach of contract, and specific performance fall within the purposes and policies advanced by the U.C.C. and that they are preempted by its terms. Article 3 specifically regulates cashier's checks. Unlike a personal check, these checks carry the promise of the bank to the holder. Va. Code

§ 8.4-403, Official Comment 4. As a result, if a bank chooses not to honor a cashier's check as an accommodation to its customer, its liability is governed by Va. Code § 8.3A-411. That section provides:

> (a) As used in this section, "obligated bank" means the acceptor of a certified check or the issuer of a cashier's check or teller's check bought from the issuer.
>
> (b) If the obligated bank wrongfully (i) refuses to pay a cashier's check or certified check, (ii) stops payment of a teller's check, or (iii) refuses to pay a dishonored teller's check, the person asserting the right to enforce the check is entitled to compensation for expenses and loss of interest resulting from the nonpayment and may recover consequential damages if the obligated bank refuses to pay after receiving notice of particular circumstances giving rise to the damages.
>
> (c) Expenses or consequential damages under subsection (b) are not recoverable if the refusal of the obligated bank to pay occurs because (i) the bank suspends payments, (ii) the obligated bank asserts a claim or defense of the bank that it has reasonable grounds to believe is available against the person entitled to enforce the instrument, (iii) the obligated bank has a reasonable doubt whether the person demanding payment is the person entitled to enforce the instrument, or (iv) payment is prohibited by law.

The issue thus becomes whether Alliance Bank "wrongfully" refused to honor the cashier's check. "If the bank is not obligated to pay, there is no recovery." Va. Code § 8.3A-411, Official Comment 3. Defendant asserts four affirmative defenses: (1) The terms of Plaintiffs business account agreement with Alliance Bank permitted Defendant to stop payment on the cashier's check under the circumstances which occurred; (2) The terms of § 8.3A-411(c) release Defendant from its obligation to pay; (3) The Bank's obligation to pay was discharged by the "Joint Agreement to Close Account," which caused the Bank to relinquish its right to file an interpleader action; and (4) The "hold harmless" provision of the "Joint Agreement to Close Account" protects the Bank against Plaintiff's claims.

The Court finds that the terms of § 8.3A-411(c) prevent the plaintiff from prevailing upon a claim under Va. Code § 8.3A-411(b). Therefore, the Court does not reach the other defenses raised by Alliance Bank. Defendant argues that Va. Code § 8.3A-411(c) provides the Bank with a statutory

defense to the Plaintiff's claims. Under that section, a bank may dishonor or stop payment on a cashier's check, if: (1) The bank suspends payments; (2) The obligated bank asserts a claim or defense of the bank that is has reasonable grounds to believe is available against the person entitled to enforce the instrument; (3) The obligated bank asserts has a reasonable doubt whether the person demanding payment is the person entitled to enforce the instrument; or (4) Payment is prohibited by law. Va. Code § 8.3A-411(c).

Here, the undisputed facts show that Alliance Bank stopped payment on the cashier's check because Kazmi advised Alliance Bank that Khan had procured the cashier's check by fraud. A bank may stop payment on its cashier's check if it has reasonable grounds to believe the check was procured by fraud. *See, e.g., EA Management v. JP Morgan Chase Bank*, No. 07-11629, 2008 U.S. Dist. LEXIS 78232, *17 (E.D. Mich. Oct. 6, 2008); *Hart v. North Fork Bank*, 37 A.D.3d 414, 415, 829 N.Y.S.2d 624 (N.Y. App. Div. 2007) (holding that a bank may stop payment on its cashier's check if "there is evidence of fraud"); *In re Johnson*, No. 04-83665, 2005 Bankr. LEXIS 2568, *6 (Bankr. C.D. Ill. December 20, 2005) ("A bank may be justified in stopping payment on a cashier's or teller's check in cases of error or fraud.").

In this case, Kazmi presented Alliance Bank with a sworn affidavit, stating that authorization for the $35,000 check drawn from Advantage's account was never given by any authorized representative of the company and that the check was "insofar as the affiant is concerned . . . fraudulently obtained." The Court finds that this Affidavit presented the Bank with reasonable grounds to believe the check was procured by fraud.

In a remarkably similar case, the United States District Court for the Eastern District of Michigan found that the Bank properly stopped payment on a cashier's check after it was advised that it was procured by fraud. *EA Management*, 2008 U.S. Dist. LEXIS 78232, at *17. In that case, the plaintiff was the holder of 33 1/3 percent of the outstanding stock of Direct Lending, a mortgage lender. The plaintiff entered into an agreement to sell back his interest in Direct Lending to the other shareholder, in accordance with a "Purchase Agreement." *Id.* at *3. During the time in which the plaintiff was scheduled to be repaid for his interest in Direct Lending, but before he received full payment, he wrote himself two checks out of Direct Lending's account. *Id.* at *5. After depositing this money into his own personal account with the Bank, he obtained three cashier's checks. *Id.* at *6. Shortly after procuring the cashier's checks, the Bank was contacted by Direct Lending's other shareholder. The Bank was advised that the two checks plaintiff had written out of Direct Lending's account were procured by fraud. The Bank then refused to honor the cashier's checks. *Id.*

In *EA Management,* the Court found that the bank did not "wrongfully" refuse to honor its cashier's check under M.C.L. § 440.3411. *Id.* at *21. The Court found that the plaintiff only had standing to challenge the cashier's check for which he was the payee. *Id.* at *14. This Court finds the reasoning in the *EA Management* case persuasive. The Court in *EA Management* states:

> Elias admits that he procured Check No. 2253 and the Starter Check through fraud. However, Elias says, because the fraud was against Direct Lending not JP Morgan, he may still bring a claim to enforce the three Cashier's Checks. This argument lacks merit. Elias falsely represented to JP Morgan that he was lawfully entitled to Check No. 2253 and the Starter Check. Elias then used funds obtained through this fraudulent transaction to fund the three Cashier's Checks at issue. When Direct Lending contacted JP Morgan to stop payment on the checks, the burden of covering the funds listed on the three checks fell solely to JP Morgan. Therefore, the transaction was not only an attempt to defraud Direct Lending, but also JP Morgan.

*Id.* at *21-*22. The Michigan statute and the Virginia statute are identical. Like *EA Management,* Alliance Bank was informed by its customer that the funds used to procure the cashier's check were fraudulently obtained. Under the circumstances, the bank had reasonable grounds to believe the check was procured by fraud. Therefore, Alliance Bank is not liable to the defendant under Va. Code § 8.3A-411(b).

Plaintiff's argument rests upon the foundation that Defendant's refusal to honor the cashier's check was "wrongful." Section 8.3A-411 makes it clear that if a bank does not "wrongfully" refuse to pay its cashier's check, it will not incur liability. Va. Code § 8.3A-411, Official Comment 3. Plaintiff argues that, because the alleged fraud was against Advantage Title and *not* Defendant, he *may* still bring a claim to enforce the cashier's check. In support of his position, Plaintiff contends that the Bank may not refuse to pay a cashier's check based on a defense that the remitter has. The remitter is the person or entity who purchases the cashier's check. Va. Code § 8.3A-103(a)(11). In this case, the remitter is Advantage Title. Va. Code § 8.3A-411, Official Comment 2; *Patriot Bank v. Navy Fed. Credit Union,* 58 Va. Cir. 251, 256 (Fairfax Co. 2002). The Court in *Patriot Bank* did not deal with allegations of fraud. Rather, it addressed the sufficiency of the cashier's check's endorsements. *See Patriot Bank v. Navy Fed. Credit Union,* 58 Va. Cir. 251 (Fairfax Co. 2002). While that is undoubtedly a correct statement of

law, it is of no avail in the instant case for the following reason. If it is in fact true that the cashier's check was obtained by fraud, the victim of that fraud is not only Advantage Title but Alliance Bank as well. Therefore, the allegations of fraud also implicate the Bank, and thus it has a right to assert them as a defense. *See EA Management*, 2008 U.S. Dist. LEXIS 78232, at *22.

Accordingly, for the reasons stated above, Alliance Bank's Plea in Bar is granted and the matter is dismissed with prejudice.