## CIRCUIT COURT OF FAIRFAX COUNTY

Asim Khan

v.

Alliance Bank

March 24, 2010

Case No. CL 2009-14692

BY JUDGE RANDY I. BELLOWS

This case presents the following question: Are sanctions warranted when a plaintiff files suit seeking relief he has already obtained? For the reasons stated below, the Court answers that question in the affirmative and imposes sanctions on both the plaintiff and his counsel.

*Background*

On October 9, 2009, the plaintiff, Asim Khan, filed suit against the defendant, Alliance Bank (hereinafter "the bank"), asserting claims of conversion, breach of contract, and specific performance. The facts of the case have been described in detail in the Court's Letter Opinion of December 22, 2009, which reads in part as follows:

> Plaintiff Asim Khan and his business partner, Sibtain Kazmi, members of Advantage Title and Escrow, L.L.C. ("Advantage Title"), opened a business account with Alliance Bank in November 2003. Both were signatories on the account. The parties' business relationship soured over time.
> On May 12, 2009, Kazmi wrote a letter to Alliance Bank requesting that Khan be removed as a signatory from

all the accounts of Advantage Title. On May 20, 2009, Khan wrote Alliance Bank a $35,000 check from the business account in exchange for a cashier's check. On May 21, 2009, Kazmi delivered an "Affidavit of Unauthorized Transaction" to Alliance Bank, stating that the $35,000 cashier's check was "fraudulently obtained." In response, Alliance Bank issued a stop payment on the cashier's check issued to Khan and re-credited the money to Advantage's account. Defendant then wrote a letter to counsel for Khan and Kazmi informing them that the funds in the Joint Account would be interpleaded with the Court. In June 2009, Kazmi's counsel sent Alliance Bank a letter requesting that it transfer the funds pursuant to a joint agreement between the parties, which was signed by both Khan and Kazmi. Counsel's letter stated that this arrangement would "avoid the necessity of an interpleader action." The "Joint Agreement to Close Account" directed Alliance Bank to wire transfer the balance of Advantage Title's account, which included the $35,000 referenced above, to the trust account of Kazmi's attorney. Defendant wired this money pursuant to the signed instructions from Khan and Kazmi.

Khan, as an individual, now asserts claims against Alliance Bank for conversion, breach of contract, and specific performance for issuing the initial stop payment order on the $35,000 cashier's check. Asserting that the cashier's check constituted an unconditional promise of payment pursuant to Va. Code § 8.3A-106, Khan claims he is entitled to damages, interest, and attorney's fees pursuant to Va. Code § 8.3A-411.

*Khan v. Alliance Bank,* 79 Va. Cir. 634, 634-35 (2009).

In the Court's Letter Opinion of December 22, the Court sustained the defendant's Plea in Bar and dismissed the action with prejudice. *Id.* at 639. The Court found that the bank was entirely within its rights to stop payment on the cashier's check after Mr. Kazmi presented the bank with a sworn affidavit alleging that the check was obtained by fraud. *Id.* The Court's Letter Opinion, however, did not resolve or even address the issue of sanctions and attorney's fees and costs. That matter was argued on February 19, 2010, and is now ripe for decision.

*Discussion*

That this Court sustained the Plea in Bar in no way resolves the matter of sanctions, for a sanctions motion is never resolved on the basis of who wins and who loses the underlying litigation. Were it otherwise, sanctions would lie in virtually every case, because it is the inherent nature of litigation that one side prevails and the other side does not. Rather, the question presented by a sanctions motion is whether the Complaint "is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Va. Code § 8.01-271.1.

If all the Court had before it were the "four corners" of the Complaint and knew nothing else of the case, it would impose no sanctions. That, however, is not all the Court has before it. Rather, the circumstances preceding the filing of the Complaint make clear that the Complaint was not "well grounded in fact" and was "interposed for a[n] improper purpose." Va. Code § 8.01-271.1 That "improper purpose," succinctly stated, was to obtain from the bank $35,000 that had already been paid out by the bank to Advantage Title at the specific request and at the specific instruction of the very plaintiff seeking relief in the instant case. Under these circumstances, sanctions are warranted, and must be imposed against both the plaintiff and his counsel.

To understand this conclusion, it is necessary first to examine a chronology of events:

On May 20, 2009, Mr. Khan wrote a $35,000 check on Advantage's account and used the check to purchase a $35,000 cashier's check from Alliance Bank.

On May 21, 2009, Mr. Kazmi filed with the bank a sworn affidavit of unauthorized transaction, alleging that the $35,000 check was "fraudulently obtained." On that basis, Alliance Bank issued a stop payment on the cashier's check.

On May 26, 2009, Alliance Bank credited $35,000 back to Advantage's account, representing the value of the cashier's check that had been purchased with Advantage's funds six days earlier by Mr. Khan.

On June 17, 2009, Patricia Fettmann, counsel for Alliance Bank, wrote both Horace McClerklin (Mr. Khan's counsel) and Asim A. Ghafoor (Mr. Kazmi's counsel). The letter reads in part as follows:

Both members of Advantage Title and Escrow, L.L.C., have made claims on the money in the account. Mr. Kazmi's actions in this matter resulted in the account being frozen.

Mr. Kazmi directed Alliance in writing to stop Mr. Khan from taking one-half of the funds from the account. Nevertheless, Mr. Ghafoor and his client have each argued that Mr. Kazmi owns at least one-half of the account and should be able to write a rent check. However, such an argument requires Alliance Bank to take sides as to which party can access the funds, something which Alliance will not, and cannot, do.

The parties have placed the Bank in an untenable position. Therefore, be advised that I have been directed to interplead the funds with the Court unless this office receives written instructions, signed by both Mr. Kazmi and Mr. Khan, on or before noon, Monday June 22, 2009.

Letter from Ms. Fettmann to Mr. Ghafoor and Mr. McClerklin (dated June .17, 2009).

On June 19, 2009, according to Plaintiff's Opposition to Defendant's Plea in Bar, "both counsel [i.e., Mr. Horace McClerklin, on behalf of Mr. Khan, and Asim Ghafoor, on behalf of Mr. Kazmi] and Ms. Fettmann, in a joint conference call, agreed that, to avoid the needless legal fees and the necessity of the interpleader action and since the Bank wanted to terminate its relationship with the LLC, the LLC's account would be closed and the funds remaining in the *LLC's account* would be transferred to Mr. Khazmi's [sic] counsel's trust account." (Pl.'s Opp. to Plea in Bar ¶ 5 (emphasis in original).)

On June 25, 2009, Mr. Ghafoor sent a letter to Ms. Fettmann and Mr. McClerklin, stating that "Mr. McClerkin and I agreed today to jointly withdraw all funds from Advantage Title & Escrow, L.L.C. (Advantage) until we can resolve the underlying dispute amongst our clients. This letter confirms Sibtain Kazmi's consent to place funds into the trust account of my solo practice, Law Offices of Asim Ghafoor. I have placed a signature block at the end of the letter for Mr. Khan or Mr. McClerklin as his counsel to approve this transaction and release the bank from further liability." The letter was signed by Mr. Ghafoor and Mr. Kazmi. Letter from Mr. Ghafoor to Ms. Fettmann and Mr. McClerklin (June 25, 2009).

On June 26, 2009, Ms. Fettmann sent a fax to Mr. Ghafoor and Mr. McClerklin, which reads as follows:

I am in receipt of Mr. Ghafoor's June 25, 2009, letter. Unfortunately, I am advised that Alliance Bank cannot accept the directives signed by the lawyers because only the individuals are authorized signatories on the account. Therefore, the Bank requests that Mr. Kazmi and Mr. Khan sign the June 25, 2009, letter indicating their approval for the wiring of the balance of the funds and closing the account. Please provide at your earliest.

Also on June 26, 2009, Mr. McClerklin sent Ms. Fettmann by facsimile a letter whose "Re" line read "Sibtain Kazmi, Asim Khan and Advantage Title and Escrow, L.L.C." and whose contents read as follows: "Enclosed with this letter is the Joint Agreement to Close Account signed by Messrs. Khan and Kazmi. It is requested that the Bank, as requested, transfer the funds, thereby avoiding the necessity for an interpleader action and the associated costs and delay. The original of this letter is being placed in the mail today." Attached to the letter was the "Joint Agreement to Close Account," which instructed the bank to close the account and send "the remaining funds" to Mr. Ghafoor's attorney trust account. The Agreement was signed by Mr. Khan and Mr. Kazmi and contained the following language:

> The parties hereto agree to hold the said Bank harmless from and against any and all claims arising out of the requested transfer and the disposition of said funds after said transfer. The signatories further agree that any dispute arising between them regarding the said funds after the agreed transfer shall be brought in the appropriate Court in the State of Virginia having jurisdiction over the said Advantage Title & Escrow, L.L.C.

On June 29, 2009, Alliance Bank sent $53,751.95 to Mr. Ghafoor's attorney trust account, representing the balance in the Advantage Title account. That sum of money included the $35,000 that had been re-credited to Advantage Title after payment of the cashier's check was stopped.

On September 17, 2009, Mr. McClerklin sent Ms. Fettmann a demand letter on behalf of Mr. Khan, stating that it would institute legal action if the bank did not pay to Mr. Khan the face amount of the check within a specified time frame.

On September 18, 2009, Ms. Fettmann sent Mr. McClerklin a letter stating that Alliance Bank "rejected your demand for payment: Alliance Bank followed your client's written instructions, copy of which is attached. Having already followed his instructions, your letter requesting a different course of action is neither timely nor deemed to be made in good faith." Ms. Fettmann also warned Mr. McClerklin that, if he filed suit, "we will be seeking sanctions against you and your client for filing a frivolous action, not supported by the facts, law, or equity." The request for sanctions and attorney's fees appears at the conclusion of the Defendant's Plea in Bar.

On October 9, 2009, Mr. McClerklin, on behalf of Mr. Khan, filed the instant suit.

It is clear from the foregoing chronology that, at the time this Complaint was instituted, Mr. Khan and his counsel, Mr. McClerklin, were well aware that the very money they sought in the lawsuit (along with punitive damages) had already been paid out by the bank to Mr. Ghafoor's trust account. Mr. Khan signed the "Joint Agreement to Close Account," and Mr. McClerklin transmitted the agreement to Ms. Fettmann. Mr. Khan and Mr. McClerklin had to have understood that the funds now in the Ghafoor trust account included the $35,000 that had been re-credited to the account on May 26, 2009.

Mr. Khan's Complaint at Count I: Conversion states as follows: "That on May 26, 2009, the Defendant, without notice to or the authority of Plaintiff and without instituting legal proceedings, took possession of Plaintiff's funds represented by the said Check and converted and disposed of the same to Defendant's own use or that of another party." This language would suggest that counsel was unaware of the disposition of the $35,000 after the bank issued the stop payment. The course of correspondence between the bank and Mr. McClerklin and Mr. Ghafoor makes clear, however, that Mr. Khan and Mr. McClerklin understood that the $35,000 had been re-credited to the same Advantage Title account from which the funds had been withdrawn. Indeed, in the plaintiff's First Request for Production of Documents, filed on October 9, 2009 (which was the same date the Complaint was filed), Mr. McClerklin specifically requests, at Paragraph 4, "Any and all documents discussing or relating to the order, instruction, or decision to 'credit' back to the aforesaid account [referenced earlier as Account # 0012120, which is the Advantage Title Account] the $35,000 deducted from that account concurrent with the issue of the Certified Check issued to Asim Khan on May 20, 2009."

To be sure, Mr. Khan had every right to litigate the legal authority of the bank to stop payment on the cashier's check he had obtained. What was improper was the institution of such litigation after Mr. Khan and Mr. McClerklin already knew that the money in question had been re-credited to Advantage's account and then, at Mr. Khan's own behest, sent to Mr. Ghafoor's trust account. Mr. Khan and Mr. McClerklin took specific measures to get those funds out of the bank's hands and into Mr. Ghafoor's trust account. Once that was accomplished, it was completely improper to turn around and sue the bank for the very same money they had directed be transferred to the trust account pending resolution of the dispute. While Mr. Khan may have had nothing to do with the bank's decision to stop payment on the cashier's check and re-credit the $35,000 to the Advantage account, he had everything to do with the bank's agreement to transfer the money to Mr. Ghafoor's trust account. Indeed, the bank made it clear it would not take such action without Mr. Khan's express approval. Once that approval was given and the money transferred out of the banks hands, Mr. Khan forfeited his right to seek to recover the same money from the bank. Therefore, the instant lawsuit was not well grounded in fact and was instituted for an improper purpose and sanctions are warranted.

The plaintiff opposes the imposition of sanctions and makes various arguments, none of which this Court finds to be meritorious.

First, Plaintiff argues that the Khan cashier's check transaction and the closing of Advantage's account and transmittal of its funds to Mr. Ghafoor were two entirely separate matters. In the former matter, Mr. Khan acted in his "individual" capacity. In the latter matter, Mr. Khan acted in his "representational" capacity. Thus, argues the plaintiff, the bank's act of re-crediting the $35,000 back to the Advantage account had nothing to do with the plaintiff in his individual capacity and does not relieve the bank of liability for stopping payment of the check. See the following statements by the plaintiff: (1) "Any sums re-credited to its customer's account are the bank's own money, giving it only a right to recover from its customer. ... *The Plaintiff makes no claim to that money*." (Pl.'s Memo in Support of Motion for Reconsideration 11 (emphasis in original).) (2) The request to transfer the funds to the Ghafoor trust account was made by "[m]embers of the Defendant/Counter Claimant's customer, Advantage Title & Escrow, L.L.C., in their representative capacity." (Pl.'s Ans. to Counterclaim ¶ 5.) (3) The plaintiff draws the distinction between the plaintiff acting in his "individual right [and] not in his capacity as a Member of the Advantage Title & Escrow, L.L.C." (Pl.'s

Opp. to Plea in Bar ¶ 1.) (4) "It is Plaintiff's position that despite the Defendant's claim, the $35,000 undergirding Plaintiff's Cashier's Check was no part of the LLC's funds that were transferred by the agreement of the LLC's Members, acting within their authority, on behalf of the Bank's customer, the LLC, Plaintiff's funds were and are in the Bank's account as the Bank is both the issuing and obligated Bank." (Pl.'s Opp. Plea in Bar ¶ 8.)

The Court finds this argument to be without merit. To begin with, these two matters were by no means separate and distinct. Mr. Khan used his status as a representative of Advantage with check-writing authority to write the $35,000 Advantage check used to obtain the $35,000 cashier's check. Nowhere in Mr. McClerklin's Complaint does he even reference the salient fact that the funds used to buy the cashier's check came from Advantage's account. Nevertheless, it is an undisputed fact that this was the source of the funds. Moreover, when the bank stopped payment on the cashier's check obtained with Advantage's funds, it re-credited the money to Advantage's account, thus making Advantage whole. When the bank ultimately agreed to transfer the contents of Advantage's account to Mr. Ghafoor's trust account, it did so only after insisting that Mr. Khan and Mr. Kazmi personally sign the Joint Agreement to Close Account, and Mr. Khan and Mr. Kazmi proceeded to do exactly that. Plaintiff's statement that he now "makes no claim" to the money transferred to Mr. Ghafoor's trust account completely ignores the fact that the money would never have been transferred to Mr. Ghafoor's trust account without Mr. Khan (and Mr. Kazmi) making a very explicit "claim" on this money. Indeed, it was their dominion over these funds, including, of course, the $35,000 re-credited to the account, that caused the bank to honor their instructions to close the account and transfer the funds to the account they designated.

In short, while there are undoubtedly circumstances where individuals may act both in an individual capacity and in a representational capacity, this is not such a circumstance. There were not two Mr. Khans, but just one, and that one used his authority to withdraw $35,000 from Advantage's account to purchase the cashier's check, and then, after the funds had been re-credited to the account, he used his authority to instruct the bank to transfer the funds to Mr. Ghafoor's trust account. Having exercised his authority to dispose of the funds, Mr. Khan cannot now act as if this was the work of a stranger.

Second, Plaintiff argues that the "hold-harmless provision *only* applies against the physical act of transferring the funds [to Mr. Ghafoor's trust account], and against any misuse of the funds once those funds were

in Mr. Ghafoor's Trust Account." (Pl.'s Opp. to Motion for Ruling on Unresolved Issues at Paragraph 4) (emphasis in original); Pl.'s Opp. to Plea in Bar ¶ 8.) In other words, argues the plaintiff, Alliance Bank was not held harmless against its decision to stop payment on Mr. Khan's cashier's check but, rather, only against its decision to transfer the funds in the Advantage account to Mr. Ghafoor's trust account. This argument, however, completely misses the point. The "hold harmless" language, however it is interpreted, does not diminish the significance of the bank transferring the $35,000 to Mr. Ghafoor's trust account. Rather, when that act occurred, more particularly when it occurred at the behest of Mr. Khan, the plaintiff and his counsel could no longer properly seek to recover the same funds from the bank. This is true whether the "hold harmless" language was broad, narrow, or absent entirely.

Third, Plaintiff argues that Plaintiff's counsel was "simply the last in the chain of events" that culminated with the transfer of funds from Alliance Bank to Mr. Ghafoor's trust account. (Pl.'s Opp. to Motion for Ruling on Unresolved Issues ¶ 3.) The Court finds no merit in this argument for three reasons.

(1) Mr. McClerklin was not merely the transmitter of the June 26, 2009, joint agreement to close the Advantage account. Rather, his cover letter states the following: "It is requested that the Bank, as requested, transfer the funds, thereby avoiding the necessity for an interpleader action and the associated costs and delay."

In Plaintiff's Opposition to Defendant's Plea in Bar at Paragraph 7, the plaintiff states that "[b]ank's Counsel's attempt to make it appear that it was Plaintiff's counsel who 'requested' the transfer of the said funds is disingenuous, misleading, and untruthful. Plaintiff's counsel was merely the last in the chain and simply forwarded the L.L.C. Members' agreed document to Bank's counsel." In fact, as the foregoing makes plain, Plaintiff's counsel specifically did request the transfer of funds.

(2) Mr. McClerklin, far from being a passive observer of the events resulting in the bank transferring the balance of funds in the Advantage account to Mr. Ghafoor's trust account, rejected the "broad" language of the release drafted by Mr. Ghafoor and replaced it with "narrowly tailored" language. (Pl.'s Opp. to Plea in Bar ¶¶ 7-8.) Given the ensuing events, it appears that this was done in the belief that it would permit Mr. Khan *both* to instruct the bank to send Mr. Ghafoor the balance in the Advantage account (including the $35,000 re-credited to that account) and to subsequently make a personal demand on the bank for $35,000.

It is worth noting that Ms. Fettmann states that Mr. McClerklin never shared this intention with her: "Prior to your September letter demanding payment of the cashier's check, you *never* advised that you/your client were demanding payment of the cashier's check or that you intended to demand payment after the funds were wired. At no time during these communications did you ever assert that your client Mr. Khan was claiming the right to payment of the cashier's check. We specifically discussed that Alliance Bank had re-deposited the $35,000 funds into the Advantage Title account and frozen the account." Letter from Ms. Fettmann to Mr. McClerklin (Feb. 1, 2010) (emphasis in original) (copied to the Court in response to Mr. McClerklin's letter to Ms. Fettmann, dated January 22, 2010, also copied to the Court).

(3) Most significantly, even if Mr. McClerklin had not been intimately involved in the events of June 2009, he would still be charged with knowledge of these events when he initiated the instant lawsuit. He is the person who signed the Complaint (Compl. 3), thereby certifying that it was not imposed for "any improper purpose." Va. Code § 8.01-271.1.

Fourth, Plaintiff asserts that the defendant never identifies "any specific pleading signed by the Plaintiff's counsel which violates 8.01-271.1." (Pl.'s Opp. to Motion for Ruling on Unresolved Issues ¶ 8.) This argument is without merit. It is clear to this Court that the basis for seeking sanctions is the filing of this lawsuit and, so, it is the Complaint upon which this Court has focused.

Fifth, the plaintiff argues that the exhibits supporting the defendant's request for sanctions all predate the filing of the lawsuit. (Pl's Opp. to Motion for Ruling on Unresolved Issues ¶ 10.) This argument is also without merit. A trial court is not required to put on blinders and ignore the circumstances leading up to and surrounding the institution of a lawsuit. It is those circumstances that establish that this lawsuit was instituted for an improper purpose.

Sixth, the plaintiff argues that an award of attorney's fees to the Defendant in this case "would be in the nature of prohibited sanctions; a miscarriage of justice." (Pl.'s Opp. to Motion for Ruling on Unresolved Issues ¶ 12.) It appears to be the plaintiffs position that, because there was no underlying contract providing for an award of attorney's fees to the prevailing party, this Court cannot award such fees in the instant case. This argument, too, is without merit. Virginia Code § 8.01-271.1 provides that the Court may order as a sanction the payment "of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper or making of the motion, including a reasonable attorney's fee."

Finally, the plaintiff accuses the defendant of attempting to take a "second bite at the apple" by seeking sanctions after this Court issued a Letter Opinion sustaining the Plea in Bar which makes no reference to sanctions. *See* Letter from Mr. McClerklin to Ms. Fettmann (Jan. 22, 2010) (copied to the Court); *see also* (Pl.'s Opp. to Motion for Ruling on Unresolved Issues ¶¶ 1-2) ("The motion is an anomaly and a veiled attempt to seek, essentially, to reopen a hearing on its Motion for Plea in Bar. . . ." "Had the Court deemed it proper under the circumstances to grant Defendant's requests for sanctions, and /or attorney's fees, the Court's Order would have reflected such."). This argument, too, is without merit. The Court's December 22, 2009, decision simply does not address the issue of attorney's fees and sanctions. This Letter Opinion does.

## Conclusion

Mr. McClerklin argues that "[a]n award of attorney's fees as a sanction should never be a routine matter." (Pl.'s Opp. to Motion for Ruling on Unresolved Issues ¶ 11.) This Court agrees. This, however, is far from a routine matter. A party and his counsel that knowingly institute a lawsuit to recover what they have already recovered are acting with an "improper purpose" and are filing a lawsuit that is not "well grounded in fact." Therefore, the Court shall impose sanctions on both Mr. Khan and Mr. McClerklin, jointly and severally. The Court finds that the appropriate sanction is the payment of Alliance Bank's attorney's fees and costs, totaling $7,326.53 (based on Ms. Fettmann's affidavits), which this Court finds to be reasonable.

## Order

Before the Court is Defendant's Motion for Sanctions, Attorney's Fees, and Costs. For the reasons stated in the Court's Letter Opinion, issued today, the Court imposes sanctions against both the plaintiff, Asim Khan, and his counsel, Horace McClerklin, joint and severally, in the amount of $7,326.53, representing Ms. Fettmann's attorney's fees and costs. Such sanction is to be paid to Alliance Bank within ninety days of the date of this Order. This is not a Final Order. Both parties are directed to confer and submit a Final Order within fifteen calendar days, if there are no pending matters to be resolved.