# THE KROGER COMPANY

## v.

# APPALACHIAN POWER COMPANY

Record No. 920078

November 6, 1992

Present: All the Justices

*John L. Cooley (Robert A. Mullen; Wooten & Hart*, on briefs)`,` for appellant.

*James W. Jennings, Jr. (Frank K. Friedman; Woods, Rogers & Hazlegrove*, on brief), for appellees.

JUSTICE KEENAN delivered the opinion of the Court.

In this appeal, we consider whether the trial court properly sustained a plea in bar filed by Appalachian Power Company (APCO), which asserted that Tariff No. 11 (the Tariff), issued by the State Corporation Commission, barred an action against APCO brought by The Kroger Company (Kroger).[1]

Kroger filed a motion for judgment seeking $1.5 million from APCO, Creative Construction and Development Corporation (Creative Construction), and Magic City Sprinkler, Inc. (Magic City) for damages incurred as a result of an electrical fire which originated in wiring owned and maintained by Kroger. Kroger alleged that APCO negligently supplied power to its facility when APCO knew or should have known of a defect in the wiring of that facility. Kroger

---

[1] A tariff is a schedule of rates, rules, and regulations issued pursuant to an order of the State Corporation Commission. It sets out the rates which a public utility must charge and the terms and conditions under which it is required to supply service to its customers. Code § 56-234 *et seq.* As a public utility company, APCO is required to furnish service to any individual, firm, or corporation along its power lines who requests such service. Code § 56-234.

also alleged that Creative Construction was negligent in failing to install properly the electrical equipment and wiring, and that Magic City negligently installed the sprinkler system at the Kroger facility.[2]

In response to the motion for judgment, APCO filed its plea in bar and grounds of defense. Kroger and APCO stipulated that, in ruling on the plea in bar, the trial court could consider all of the materials generated by the discovery proceedings. Upon review of the matter, the trial court sustained APCO's plea.

Initially, Kroger maintains that the plea in bar was an inappropriate method for determining whether APCO had a common law duty to Kroger apart from the Tariff, as well as whether such duty was breached. We do not reach this issue, however, because Kroger did not raise an objection in the trial court to the proper scope of the plea in bar, nor did it assign error in this Court on that basis. Rule 5:25; Rule 5:17(c).[3]

Kroger next contends that the trial court erred in ruling that the Tariff barred its claim that APCO was negligent in (1) reenergizing Kroger's lines when it knew or should have known that they were defective, and (2) replacing a small fuse with a larger fuse which allowed a dangerous amount of power to flow into Kroger's facility.

In reviewing the trial court's ruling, we first observe that a plea in bar is a defensive pleading that reduces the litigation to a single issue. Upon agreement of the parties, that issue may be submitted, with an identified body of facts, for the trial court's determination. *Stanardsville Vol. Fire Co. v. Berry*, 229 Va. 578, 586, 331 S.E.2d 466, 471 (1985). Here, in agreeing to proceed on the plea in bar, Kroger and APCO submitted to the trial court all legal and factual questions underlying the single issue whether the Tariff barred Kroger's negligence action against APCO.

The Tariff, which establishes the contractual relationship between the parties, specifies that the customer is responsible for the maintenance and use of its own equipment. Further, under the Tariff, APCO has no duty to inspect or maintain the customer's equipment. In defining APCO's liability to its customers, the Tariff provides, in material part:

---

[2] Kroger's allegations regarding the conduct of Creative Construction and Magic City are not before us in this appeal.

[3] We further note that Kroger's counsel agreed to the trial court using all discovery materials from Kroger's prior action, which had been nonsuited, in resolving the plea in bar.

Unless otherwise provided in a contract between Company and customer, the point at which service is delivered by Company to customer, to be known as "delivery point," shall be the point at which the customer's facilities are connected to the Company's facilities. The Company shall not be liable for any loss, injury, or damage resulting from the customer's use of his equipment or occasioned by the energy furnished by the Company beyond the delivery point.

The customer shall provide and maintain suitable protective devices on his equipment to prevent any loss, injury or damage that might result from single phasing conditions or any other fluctuation or irregularity in the supply of energy. The Company shall not be liable for any loss, injury or damage resulting from a single phasing condition or any other fluctuation or irregularity in the supply of energy which could have been prevented by the use of such protective devices.

■ Kroger's evidence showed that the fire originated in its own wiring, which was either defectively manufactured or damaged at the time of installation. Therefore, the fire occurred at a location beyond APCO's "delivery point," as defined in the Tariff. Kroger's evidence also showed that the fire began as a result of an electrical condition known as single phasing.[4] Despite the availability of equipment to protect against this condition, Kroger decided against its use.

Kroger asserts that, notwithstanding the above Tariff provisions which specify that APCO is not liable to the customer under these circumstances, APCO has a common law duty not to reenergize a customer's lines when it knows or should know that those lines are defective. Thus, Kroger argues that the provisions of the Tariff do not give APCO a complete release from liability.

■ While we agree with Kroger that the Tariff does not shield APCO from all liability in providing power to a customer beyond the delivery point, we emphasize that APCO's common law duty extends only to a situation where it has actual knowledge of a dangerous condition in the customer's equipment. As this Court stated in *VEPCO v. Daniel*, 202 Va. 731, 119 S.E.2d 246 (1961):

---

[4] Single phasing results when one phase of a three-phase circuit fails to operate.

"When a transmission line is neither built, owned, nor controlled by a utility sought to be charged with damages arising out of its condition, such utility is neither bound to inspect the line nor obligated to respond in damages for injuries sustained by its defective construction or condition unless it supplies current actually knowing of these conditions and the current is the cause of the injury sued for, in which case it is the energizing of the line with knowledge of the conditions and not the conditions themselves which forms the basis of liability."

*Id.* at 735, 119 S.E.2d at 249 (citation omitted); *Barnett v. Virginia Public Service Co.*, 169 Va. 329, 337, 193 S.E. 538, 541 (1937); *Haywood v. South Hill Co.*, 142 Va. 761, 767, 128 S.E. 362, 364 (1925).

■ In the case before us, there was no evidence that APCO had *actual* knowledge of a defect in Kroger's wiring at the time it reenergized Kroger's lines. Rather, the evidence affirmatively showed that the defective wiring was located inside one of Kroger's conduits.[5] There was also evidence that, since none of the replaced fuses blew immediately after being installed, the condition of the fuses did not signal the defect which caused the fire. Therefore, since there was no evidence that APCO actually knew that Kroger's wiring was defective at the time it reenergized the lines, APCO cannot be held liable for resuming power to the Kroger facility. *Id.*[6]

■ Kroger also asserts that APCO was negligent in replacing a 12 T fuse with a 15 T fuse, which allegedly caused a dangerous amount of power to flow into the Kroger electrical system. Kroger argues that, by installing a 15 T fuse after several 12 T fuses had already blown, APCO negligently increased the power flow by 25%.

The trial court received evidence that the purpose of these transformer fuses was not to protect an individual customer's equipment but, rather, was to protect APCO's equipment so that a problem in one customer's service would not affect service to thousands of

[5] A "conduit" is a "pipe, tube, or tile for receiving and protecting electric wires or cables . . . ." Webster's Third New International Dictionary 474 (1981).

[6] We also note that, under the Tariff, APCO cannot refuse to restore power to a customer unless there is evidence of customer fraud, a delinquency in payment, or the existence of an emergency situation. As stated above, the trial court had evidence before it which indicated that APCO did not have actual knowledge that it was confronted with an emergency situation. The other two categories of exception, fraud and payment delinquency, also did not apply in this case.

other customers in the utility's distribution circuits. Further, while Kroger alleges that the use of a 15 T fuse created a dangerous situation, its own expert, Duncan Glover, testified in deposition that he was uncertain whether the fault current which caused the fire would have tripped either a 12 T fuse or a 15 T fuse.

We also observe that, under the Tariff, the customer is responsible to protect its own equipment from the effects of single phasing. Further, the Tariff requires that both parties adhere to the provisions of the applicable electrical code. In this case, the parties were governed by the National Electric Code, which had been adopted by the County of Roanoke as part of its building code. The National Electric Code art. 240-3 (1990) provides, in material part, that "[t]ransformer secondary conductors . . . are not considered to be protected by the primary overcurrent protection." Here, the transformer fuses at issue were part of the primary overcurrent protection built by APCO into its own equipment. Thus, under the Tariff, Kroger could not rely on those fuses to protect the equipment and wiring in its facility. Further, since APCO had no actual knowledge of the defects in Kroger's equipment, it likewise had no duty to Kroger apart from the requirements of the Tariff in its maintenance and selection of the fuses at issue. *Daniel*, 202 Va. at 735-736, 119 S.E.2d at 249-250.

For these reasons, we hold that the trial court did not err in granting APCO's plea in bar. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*