PRESENT: Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and Agee, JJ., and Carrico, S.J.

DOUGLAS B. BAKER, AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF VIRGINIA GRAEME BAKER

                                              OPINION BY
v. Record Number 052371              JUSTICE G. STEVEN AGEE
                                            November 3, 2006
POOLSERVICE COMPANY, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jonathan C. Thacher and Marcus D. Williams, Judges

Douglas B. Baker, personal representative of the estate of Virginia Graeme Baker, appeals from the judgments[1] of the Circuit Court of Fairfax County, which sustained the demurrer of Poolservice Company ("Poolservice") and the plea in bar of Hayward Pool Products, Inc. ("Hayward") in a wrongful death action filed by Baker, and dismissed the case with prejudice. At issue in this appeal is whether the trial court erred as to either judgment. For the reasons set forth below, we will affirm the judgments of the trial court.

I. BACKGROUND AND MATERIAL PROCEEDINGS BELOW

The facts underlying this case are tragic: Seven-year-old Virginia Graeme Baker ("Virginia") drowned on June 15, 2002 after becoming pinned underwater by suction to the drain cover of an outdoor spa. A few days before a party, the owners of the

_____
[1] Judge Thacher presided over the hearing and issued the order regarding Poolservice's demurrer. Judge Williams presided over the hearing and issued the order regarding Hayward's plea in bar. We will refer to the actions of both judges as that of the "trial court."

spa hired Poolservice to perform routine annual maintenance and cleaning of the spa and its adjoining pool, and to determine why the spa was "not working to [its] full functional capacity." In the course of this maintenance, Poolservice returned the spa's pump to its normal working condition by eliminating a clog created by hair and other foreign matter. Poolservice's repair work did not involve the drain cover and it was not hired to perform a safety inspection of the spa or to retrofit any of its parts.

Douglas B. Baker filed a wrongful death action as Virginia's personal representative against Poolservice and Hayward, the manufacturer of the drain cover used in the spa. Baker's amended motion for judgment alleged negligence and willful, wanton and reckless misconduct against Poolservice. Baker also alleged a breach of implied warranty of merchantability; breach of implied warranty of fitness; negligence; and willful, wanton, and reckless misconduct against Hayward.

Poolservice filed a demurrer asserting that the amended motion for judgment "fail[ed] to state [claims] for which relief can be granted" as it sought to impose duties on Poolservice to "retro-fit an existing spa or hot tub which it neither manufactured, installed or sold" and to "initiate campaigns for safety." At the hearing on Poolservice's demurrer, Baker

acknowledged "[t]here's no specific case on point" that would impose "a duty upon a repair person to advise the owner of a danger."  Baker also conceded that Poolservice was not negligent in its performance of the actual repairs of the spa: "they didn't breach the contract.  They did exactly what the contract called for.  They fixed the pump."

The trial court sustained Poolservice's demurrer in an order issued August 19, 2005.  In its bench ruling, the trial court explained it did so because it "could find no authority whatsoever that imposes upon a repair person a duty to warn."

Hayward filed a plea in bar to the amended motion for judgment, asserting the five-year statute of repose in Code § 8.01-250 barred Baker's action because the drain cover was manufactured and installed more than five years prior to Virginia's death.[2]  At the evidentiary hearing on the plea in bar, argument centered on whether the flat drain cover manufactured by Hayward was "an ordinary building material which would fall within the protections of the Statute of Repose, or whether it was machinery, equipment, or some other related article which would not enjoy the benefit of the Statute of

---

[2] The drain cover was manufactured in 1989 and installed in the spa on or prior to 1991, when the current property owner took possession.

Repose."[3]  On August 25, 2005, the trial court entered an order granting Hayward's plea in bar and dismissed the claims against it with prejudice.  From the bench, the trial court explained that

> [t]he characteristics of this drain cover would indicate that it is fungible and interchangeable with other similar products.  And while it looks like it's portable and so forth, it appears that it is part and parcel of the filtration system that is in the Jacuzzi spa.
> Furthermore, the evidence is unequivocal that the manufacturer of this drain cover does nothing but simply package it and then sell it to distributors who, in turn, resell it to installers and contractors who then would incorporate it into a finished Jacuzzi spa.  There appear to be no particular instructions for a particular project that may go with it . . . . The Supreme Court [of Virginia] has indicated that ordinary building materials do enjoy the benefit of the Statute of Repose in Code § 8.01-250, and the evidence would seem to indicate that this would be such an ordinary building material under the current standards set by our court.  And accordingly, it would appear also that as an ordinary building material, that it is subject to the Statute of Repose, and therefore, the Plea in Bar should be granted.

We awarded Baker this appeal.

## II. ANALYSIS

Baker assigns error to the judgments of the trial court sustaining Poolservice's demurrer, granting Hayward's plea in bar, and dismissing Baker's claims with prejudice.  We address each ruling in turn.

_____

[3] Baker agreed at the plea in bar hearing that the spa was an improvement to the real property, but contended that the spa's drain cover was not itself an improvement.

## A. Poolservice's Demurrer

Baker argues the trial court erred in sustaining Poolservice's demurrer because the amended motion for judgment pled claims against Poolservice for breaching two legal duties: (1) "a duty not to create or exacerbate a risk of physical harm in the course of making repairs to the spa" and (2) "a duty to make use of the company's superior knowledge to warn the homeowners about that risk."

Baker contends Poolservice breached the former duty when it repaired the pump system in the spa, thereby "increas[ing] the risk of suction entrapment and consequent physical injury beyond the level of risk that existed before the repairs were made."

Citing § 324A of the Restatement (Second) of Torts,[4] Baker contends "a repairman who makes [a] requested repair[,] but whose work nevertheless creates or exacerbates a dangerous condition is liable for injuries that result from the dangerous

---

[4] Section 324A of the Restatement (Second) of Torts states:
One who undertakes . . . to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
    (a)  his failure to exercise reasonable care increases the risk of such harm, or
    (b)  he has undertaken to perform a duty owed by the other to the third person, or
    (c)  the harm is suffered because of the reliance of the other or the third person upon the undertaking.

condition."  Baker posits that because Poolservice knew that a

"fully-functioning pump would increase the risk of suction

entrapment" in the spa, it breached its duty "not [to] make

repairs that it knew would increase the risk of entrapment."

Baker claims that Featherall v. Firestone Tire & Rubber

Co., 219 Va. 949, 252 S.E.2d 358 (1979), in which the Court

applied § 388 of the Restatement (Second) of Torts,[5] recognizes

that a repairman is subject to liability for physical injuries

resulting from "knowingly return[ing] property to its owner in a

dangerous condition [without] warn[ing] the owner about that

condition."  Baker also claims that under Hegwood v. Virginia

Natural Gas, Inc., 256 Va. 362, 505 S.E.2d 372 (1998),

Poolservice had a legal duty to "warn the occupants of the

---

[5] Section 388 of the Restatement (Second) of Torts
states:
    One who supplies directly or through a third person a
    chattel for another to use is subject to liability to
    those whom the supplier should expect to use the
    chattel with the consent of the other or to be
    endangered by its probable use, for physical harm
    caused by the use of the chattel in the manner for
    which and by a person for whose use it is supplied, if
    the supplier
        (a)  knows or has reason to know that the chattel
        is or is likely to be dangerous for the use for
        which it is supplied, and
        (b)  has no reason to believe that those for
        whose use the chattel is supplied will realize
        its dangerous condition, and
        (c)  fails to exercise reasonable care to inform
        them of its dangerous condition or of the facts
        which make it likely to be dangerous.

6

premises of the known dangerous defect," the risk of suction entrapment.

Poolservice responds that the trial court did not err in sustaining its demurrer because Poolservice had none of the duties Baker alleged. Poolservice contends its repairs "did nothing beyond returning the spa to its normal operating condition" and "did not alter the product to make it more dangerous [or] increase the risk of harm." Poolservice distinguishes the case at bar from the principle espoused in § 324A of the Restatement (Second) of Torts, because unlike situations where repair work created a dangerous condition, Poolservice's repairs merely restored the spa to its original and intended operating condition. Poolservice likewise asserts that it did not create the dangerous condition because any danger from the functioning spa "existed long before Poolservice ever serviced" it.

Poolservice also argues the duty Baker seeks to impose on repairmen to warn individuals of product defects would "transform the repairer into the insurer of products manufactured by others[,] a position which has no support under Virginia law." And it asserts that Featherall and § 388 of the Restatement (Second) of Torts are inapplicable because "the repairs performed by Poolservice did not render the product dangerous" and Featherall applied § 388 only in the context of

7

the manufacturer of a product. Poolservice distinguishes Hegwood based on the utility work involving an inherently dangerous substance, as compared to the "variety of services on pools and spas" that it, as a maintenance company, provides. We agree with Poolservice.

"A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." Glazebrook v. Board of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003) (citations omitted). We are thus called upon to determine whether the "amended motion for judgment alleged sufficient facts to constitute a foundation in law for the judgment sought." Hubbard v. Dresser, Inc., 271 Va. 117, 122, 624 S.E.2d 1, 4 (2006). On appeal, we undertake this review using a de novo standard, accepting "as true all facts properly pleaded in the bill of complaint and all reasonable and fair inferences that may be drawn from those facts." Glazebrook, 266 Va. at 554, 587 S.E.2d at 591.

Virginia law does not impose upon Poolservice the legal duties Baker alleged in his amended motion for judgment. While no decision has been cited by the parties or located by this Court determining the extent to which § 324A of the Restatement (Second) of Torts may be applicable as a matter of Virginia law, it is clear that even if the doctrine there set forth were

8

deemed to be applicable in the Commonwealth, it would not apply to the situation presented in the case at bar.

Baker admits that Poolservice was not negligent in performing the repairs on the spa. Poolservice did precisely what the homeowners hired it to do: return the spa to its normal, working condition. Poolservice thus did not create an unsafe condition through its repairs because any allegedly unsafe condition existed when the spa operated as intended, and had been present since the spa was manufactured and installed. Returning the spa to its normal, working condition is not a basis of liability for a repairman absent a specific undertaking to do otherwise, which is wholly absent in this case.

Baker's reliance on Featherall and § 388 of the Restatement (Second) of Torts to argue Poolservice owed a duty to warn is similarly misplaced. In Featherall, we applied § 388 in the context of a manufacturer's duty to warn of latent defects in a product. 219 Va. at 962, 252 S.E.2d at 366. We observed "[t]he duty to warn stems from the view that the manufacturer should have superior knowledge of his product." Id. This principle has no application in this case because Poolservice was not the manufacturer of the spa or any of its component parts. Nor was it hired to perform any work associated with the drain cover.

The principle espoused in Hegwood is also distinguishable from the legal duty Baker seeks to impose on Poolservice. In

9

Hegwood, a gas utility worker restored the gas supply to a home, checked the gas-fired appliances throughout the house, and shut off supply to two appliances that were not working properly. Even though the repairman warned the resident of the unsafe condition and placed warning tags on the appliances to prevent them from being turned on, one or both of the appliances were turned on by an unidentified individual, causing carbon monoxide poisoning. Hegwood, 256 Va. at 365-66, 505 S.E.2d at 374-75. The Court held:

> [W]hen a company has actual knowledge of a dangerous defect in a customer's equipment or appliance, it has a duty to exercise reasonable care to shut off the service to such equipment or appliance. The company also has a duty to warn the occupants of the premises of the known dangerous defect.

Id. at 369, 505 S.E.2d at 377 (citations omitted).

Unlike the repair work provided by Poolservice, the utility serviceman's check of the gas-fired appliances in Hegwood was a general safety check performed as part of the utility's resumption of services supplying natural gas, an inherently dangerous substance, to the resident. The warning given by the serviceman was part of a duty the utility assumed in the performance of the general safety check. In contrast, the spa owner requested Poolservice only to perform seasonal maintenance and did not hire Poolservice to perform a general safety check of the spa, or to perform any work on the drain cover.

10

Poolservice competently performed the requested repair work and returned the spa to its normal functioning capacity and was under no duty to warn of any potential dangers unrelated to its specific undertaking.  Poolservice assumed no duties outside the parameters of those for which it had been contracted.

Baker's amended motion for judgment thus failed to allege any cognizable theory under which Poolservice had any duty that could create liability for Virginia's death.  Accordingly, the trial court did not err in sustaining Poolservice's demurrer.

### B. Hayward's Plea in Bar

Baker also contends the trial court erred in granting Hayward's plea in bar because it found Baker's action was barred by the five-year statute of repose in Code § 8.01-250.  The statute provides, in relevant part:

> No action to recover for . . . bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property . . . shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction, or construction of such improvement to real property more than five years after the performance or furnishing of such services and construction.
>      The limitation prescribed in this section shall not apply to the manufacturer or supplier of any equipment or machinery or other articles installed in a structure upon real property . . . .

Baker contends that under the statute's plain language, Code § 8.01-250 is inapplicable to claims, such as his, against manufacturers of defectively-designed products that are

11

installed in improvements to real property.  Baker further contends the Court's "extra-statutory 'ordinary building materials' doctrine" does not follow the text of Code § 8.01-250 and has caused considerable confusion.  Consequently, Baker urges the Court to reconsider the "ordinary building materials" doctrine applied in Cape Henry Towers, Inc. v. National Gypsum Co., 229 Va. 596, 331 S.E.2d 476 (1985), and later cases, which Baker asserts has expanded the provisions of Code § 8.01-250 to persons not expressly covered by the text of the statute.

In the alternative, Baker argues that even under the Court's "ordinary building materials" doctrine, Code § 8.01-250 does not apply to Hayward.  Baker asserts the Cape Henry Towers line of cases affords manufacturers the benefit of Code § 8.01-250 "when the product at issue has been designed, not by the manufacturer itself, but by a member of the class of defendants identified in the statute."  In so much as "Hayward alone, without any input from the architect or engineer of the spa, designed the flat drain cover" at issue here, Baker contends the ordinary building materials doctrine does not cover Hayward.

In addition, Baker asserts the Cape Henry Towers line of cases affords manufacturers the benefit of Code § 8.01-250 when the product at issue is "'incorporated into' the structure of an improvement to real property [as opposed to] merely [being] affixed to a structure."  Baker distinguishes "Hayward's drain

12

cover[, which] was not a structural component of the spa; [instead,] the spa was a freestanding, completed structure before the drain cover was attached to its floor."

Hayward responds that the trial court properly applied Code § 8.01-250 and this Court's decisions in Cape Henry Towers and its progeny, to determine the drain cover was an "ordinary building material" and thus covered by the statute of repose. It contends that Baker's limited interpretation of Code § 8.01-250 would require this Court to "overrule or radically restrict" two decades of this court's jurisprudence interpreting the statute. Furthermore, Hayward claims "from Cape Henry Towers forward, the Court has consistently held that manufacturers of 'ordinary building materials' are part of the 'class of defendants' protected by the statute of repose." Hayward thus asserts the trial court did not err in finding the statute of repose applied to Hayward because the drain cover was a fungible component, mass-produced as a generic material to be included in swimming pools and spas and was therefore an ordinary building material. We agree with Hayward.

"A plea in bar is a defensive pleading that reduces the litigation to a single issue, which if proven, creates a bar to the plaintiff's right of recovery." Cooper Industries, Inc. v. Melendez, 260 Va. 578, 594, 537 S.E.2d 580, 590 (2000) (quoting Kroger Co. v. Appalachian Power Co., 244 Va. 560, 562, 422

13

S.E.2d 757, 758 (1992); Tomlin v. McKenzie, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996)).  The party asserting the plea in bar bears the burden of proof.  Id.  When, as here, the trial court heard evidence ore tenus and the trial court decided the issue rather than submitting it to a jury, the trial court's "findings are entitled to the weight accorded a jury verdict, and these findings should not be disturbed by an appellate court unless they are plainly wrong or without evidence to support them."  Id. at 595, 537 S.E.2d at 590.

Our jurisprudence applying Code § 8.01-250 traces back over two decades, from shortly after the General Assembly enacted the statute in its present form.  The arguments now advanced by Baker as to the construction of Code § 8.01-250 were analyzed and rejected in Cape Henry Towers.  229 Va. at 600-03, 331 S.E.2d at 479-81.  We have approved the ordinary building materials doctrine in three unanimous decisions since Cape Henry Towers: Grice v. Hungerford Mechanical Corp., 236 Va. 305, 374 S.E.2d 17 (1988); Luebbers v. Fort Wayne Plastics, Inc., 255 Va. 368, 498 S.E.2d 911 (1998); and Cooper Industries.

Under the principle of stare decisis, we reject Baker's argument that the Court should not follow its well-settled approach to examining whether a particular material falls within the protections provided by Code § 8.01-250.  The doctrine of stare decisis "plays a significant role in the orderly

14

administration of justice by assuring consistent, predictable, and balanced application of legal principles. And when a court of last resort has established a precedent, after full deliberation upon the issue by the court, the precedent will not be treated lightly or ignored, in the absence of flagrant error or mistake." Selected Risks Ins. Co. v. Dean, 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987). What we said nearly a century ago in Kelly v. Trehy, 133 Va. 160, 112 S.E. 757 (1922), is as valid now as when it was written:

> It is to the interest of the public that there should be stability in the laws by which they regulate their conduct. It may be that this [C]ourt, as at present constituted, would not, as an original proposition, have construed [the statute] as it was construed in the cases cited, but the construction of statutes ought not to vary with every change in the personnel of the appellate court. The construction was a fair and reasonable one, made after full deliberation by courts of very able judges, for whose opinion and judgment we entertain the highest respect. [T]his construction [has been] repeated three times by a unanimous court . . . and cannot now be repudiated by this [C]ourt.

Id. at 169, 112 S.E. at 760. We see no flagrant error or mistake in the ordinary building materials doctrine and consider it part of the settled jurisprudence of the Commonwealth.

The Cape Henry Towers line of cases recognizes that the statute applies to "those who furnish ordinary building materials, which are incorporated into construction work outside

15

the control of their manufacturers or suppliers." Luebbers, 255 Va. at 372, 498 S.E.2d at 913 (quoting Cape Henry Towers, 229 Va. at 602, 331 S.E.2d at 480). The equipment exclusion contained in the second paragraph of Code § 8.01-250 is

> distinguished from ordinary building materials on the ground that "unlike ordinary building materials, . . . equipment [is] subject to close quality control at the factory and may be made subject to independent manufacturer's warranties, voidable if the equipment is not installed and used in strict compliance with the manufacturer's instructions."

Id. (quoting Cape Henry Towers, 229 Va. at 602, 331 S.E.2d at 480). Based on these principles, we held in Cape Henry Towers that "exterior wall panels used in the construction of condominium units were ordinary building materials and not equipment within the meaning of Code § 8.01-250." Id. And in Grice, we held that "an electrical panel box and its component parts received from the manufacturer without instructions for their use and installation were ordinary building materials and not equipment within the meaning of the statute." 236 Va. at 308-09, 374 S.E.2d at 18-19. Most recently, we held in Luebbers, that steel panels, braces, and vinyl liners used in the construction of a swimming pool were ordinary building materials and not equipment under Code § 8.01-250. In Luebbers, we explained that the pre-fabricated structural component materials were "clearly fungible . . . . [i]ndividually, these items served no function other than as generic materials to be

16

included in the larger whole and are indistinguishable, in this context, from the wall panels we addressed in Cape Henry Towers." 255 Va. at 373, 498 S.E.2d at 913.

The evidence before the trial court clearly supported the finding that the drain cover at issue is indistinguishable from the materials found to be ordinary building materials in our prior cases. Baker does not contest that the spa to which the drain is affixed was an "improvement to real property" under Code § 8.01-250. Hayward mass-produced the drain cover for installation into swimming pools and spas. It sold the drain cover primarily, if not exclusively, to distributors. Hayward had no role designing the swimming pools and spas into which the drain covers were installed, nor did it participate in the installation of the drain cover. The drain cover was as much incorporated into the spa as an improvement to real estate as were the wall covers in Cape Henry Towers and the pool liner in Luebbers. Indeed, the drain cover in the case at bar is indistinguishable from the fungible component parts of the swimming pool found to be ordinary building materials in Luebbers.

> Here, as in Cape Henry Towers, the material[] manufactured by [Hayward] and incorporated into the finished [spa is] clearly [a] fungible component of that [spa]. Individually, [the drain cover] served no function other than as generic material[] to be included in the larger whole and [is] indistinguishable, in this context, from the wall

17

> panels we addressed in Cape Henry Towers. As such,
> these materials were ordinary building materials and
> not "equipment" within the meaning of Code § 8.01-250.

Luebbers, 255 Va. at 373, 498 S.E.2d at 913.

Lastly, we reject Baker's claim that Code § 8.01-250 only applies to manufacturers "when the product at issue has been designed, not by the manufacturer . . . but by" an individual who "perform[ed] or furnish[ed] the design, planning, surveying, supervision of construction, or construction of" the improvement to real property. All of the products we have found to be ordinary building materials in the Cape Henry Towers line of cases were designed by someone other than the designer of the improvement into which those products were incorporated. Thus, Code § 8.01-250 applies to manufacturers even when the manufacturer, rather than a person identified in the statute, designs the ordinary building material in question.

As a fungible component part of an improvement to real property, the drain cover is "ordinary building material" and is not excluded from the protection of Code § 8.01-250 as "equipment or machinery or other articles." Hayward is thus entitled to the protection of the statute of repose. Accordingly, we hold the trial court did not err in granting Hayward's plea in bar.

### III. CONCLUSION

18

The trial court did not err in sustaining Poolservice's demurrer because Baker's amended motion for judgment alleged Poolservice owed duties that are not recognized in Virginia law. Similarly, the trial court did not err in granting Hayward's plea in bar because Baker's motion for judgment was filed after the expiration of the five-year period provided in Code § 8.01-250. Accordingly, we will affirm the judgments of the trial court sustaining Poolservice's demurrer, granting Hayward's plea in bar, and dismissing the claims against both parties with prejudice.

Affirmed.