PRESENT: Hassell, C.J., Keenan,[1] Koontz, Lemons, Goodwyn, and
Millette, JJ., and Lacy, S.J.


PAXTON HAWTHORNE, CO-ADMINISTRATOR
OF THE ESTATE OF JOYCE HAWTHORNE, ET AL.

                                        OPINION BY
v.    Record No. 091127        JUSTICE BARBARA MILANO KEENAN
                                        April 15, 2010
TIMOTHY VANMARTER


KEVIN GUTHRIE

v.    Record No. 091156

TIMOTHY VANMARTER


               FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                       Charles N. Dorsey, Judge

     In these appeals of a judgment for a defendant in a

vehicular accident case alleging ordinary and gross negligence,

we consider several issues, including the circuit court's

holding that the defendant, a police officer, was entitled to

sovereign immunity.  We also consider the defendant's motion to

dismiss one of the appeals.

                        I. Pre-Trial Rulings

     In June 2005, Joyce Hawthorne was killed and Kevin

Guthrie was injured when a police vehicle driven by Senior

Officer Timothy VanMarter of the Roanoke County Police

---

[1] Justice Keenan participated in the hearing and decision
of this case prior to her retirement from the Court on March
12, 2010.

Department struck the vehicle Hawthorne was driving.  Guthrie and the co-administrators of Hawthorne's Estate, Paxton Hawthorne and Joseph Anthony (the Administrators), filed separate motions for judgment[2] in the Circuit Court of the City of Roanoke against VanMarter, alleging negligence.[3]  The circuit court granted VanMarter's motion to transfer the cases to the Circuit Court of Roanoke County, and the cases were consolidated for trial.

VanMarter filed a plea in bar asserting that he was entitled to sovereign immunity.  VanMarter argued that at the time of the accident, he was attempting to "overtake" a vehicle that was traveling at an excessive rate of speed.  Contending that this conduct was discretionary in nature, VanMarter asserted that he was immune from liability for ordinary negligence.  VanMarter also argued that, as a matter of law, his conduct was not grossly negligent because he exercised some care by applying the police vehicle's brakes and by swerving in an attempt to avoid the accident.

---

[2] These motions for judgment were filed prior to the amendment of Part Three of the Rules of Court, effective January 1, 2006, to provide that a civil action is commenced by filing a "complaint."  Rules 3:1 and 3:2; see also Ahari v. Morrison, 275 Va. 92, 96 n.2, 654 S.E.2d 891, 893 n.2 (2008).

[3] In their respective motions for judgment, Guthrie and the Administrators both named James R. Lavinder, Chief of Police of the Roanoke County Police Department, as a defendant.  However, their amended complaints named only VanMarter as a defendant.

In response, the Administrators and Guthrie (collectively, the plaintiffs) asserted that the doctrine of sovereign immunity was inapplicable because VanMarter never activated his police vehicle's emergency equipment, and because he was "overtaking" rather than pursuing a speeding vehicle. The plaintiffs further argued that any determination of gross negligence required factual findings that could not be decided by the court as a matter of law.

In a hearing conducted on the defendant's plea in bar, the circuit court considered VanMarter's testimony and the memoranda and arguments of counsel. The plaintiffs did not present the testimony of any witnesses for the court's consideration. Based on VanMarter's testimony, the circuit court found that VanMarter was pursuing a speeding vehicle at the time of the accident. The circuit court held that VanMarter's actions were discretionary in nature and that, therefore, the plaintiffs' claims of ordinary negligence were barred by the doctrine of sovereign immunity.

Following the circuit court's ruling on the plea in bar, the plaintiffs conducted depositions of two potential trial witnesses. These witnesses stated that during a period of between 30 and 45 minutes before the collision, they stood about 250 feet from Chaparral Drive and were engaged in conversation. The two witnesses related that they did not

observe a speeding vehicle before hearing the collision. Arguing that these witness accounts were "[n]ewly [d]iscovered" evidence, the plaintiffs filed a motion "to [a]mend [p]rior [r]uling," asserting that the deposition testimony created a factual dispute regarding the presence of a speeding vehicle. The plaintiffs asked that the circuit court allow the two witnesses to testify at trial, and submit to the jury the factual issue whether VanMarter was pursuing a speeding vehicle. The plaintiffs argued that if the jury determined that there was no such speeding vehicle, VanMarter would not be entitled to the protection of sovereign immunity and the jury should be instructed on both ordinary and gross negligence.

VanMarter contended that this testimony was not "newly discovered" because the witnesses' names were provided by the plaintiffs in discovery at least two weeks before the hearing on the plea in bar. VanMarter also asserted that the witnesses' proffered statements did not contradict VanMarter's account of the events that night. Thus, VanMarter asserted, the proffered testimony would not have changed the circuit court's sovereign immunity determination.

The circuit court agreed with VanMarter and denied the plaintiffs' motion to reconsider the sovereign immunity holding. The circuit court concluded that the witnesses'

4

testimony did not qualify as "after-discovered evidence," and further held that even if the court had considered the proffered testimony, the witnesses' statements would not have affected the court's sovereign immunity determination.  The plaintiffs did not request that they be allowed to present the testimony of the two witnesses to the jury for impeachment purposes or on the issue of gross negligence.

## II. Trial

The evidence at trial showed that, at the time the accident occurred, Guthrie was riding as a passenger in a vehicle driven by Hawthorne.  Guthrie testified that immediately before the accident, Hawthorne looked in both directions before leaving a driveway and turning onto Chaparral Drive.  Guthrie testified that he did not observe any other vehicles, and did not see flashing emergency lights or hear an emergency siren before the collision.  Guthrie stated that the last thing he remembered after Hawthorne turned his vehicle onto Chaparral Drive was the "sudden impact" of something hitting the vehicle.

Guthrie also presented the testimony of witnesses who qualified as experts on subjects including accident investigation and the operation of emergency vehicles.  From these witnesses, the jury heard evidence about, among other things, the conditions of the vehicles involved in the

collision, the line of sight from the driveway "looking down" Chaparral Drive, and the amount of time it would take a vehicle to travel that distance. The jury also was presented evidence regarding the "proper protocol" for activation of emergency equipment on a police vehicle during the pursuit of another vehicle.

As part of his case, Guthrie also presented the deposition testimony of VanMarter. VanMarter stated that on the night of the accident, he was driving his police vehicle northbound on Chaparral Drive and observed a car traveling in the opposite direction at 63 miles-per-hour, as measured by police radar equipment. The posted speed limit at that location was 25 miles-per-hour. VanMarter stated that he made a "U-turn" in order to pursue the car and accelerated his police vehicle by pressing its gas pedal to the floor. VanMarter conceded that he did not activate the vehicle's emergency lights and siren at that time.

In this deposition testimony, VanMarter also stated that as his speed increased, he looked down to locate and activate his vehicle's emergency equipment. At the same time, the vehicle driven by Hawthorne entered onto Chaparral Drive from a driveway. VanMarter testified that when he saw Hawthorne's car, he applied his vehicle's brakes, and attempted to turn

his vehicle so that it would strike the rear of Hawthorne's car.

In his defense, VanMarter presented the testimony of two witnesses who qualified as experts on the subject of emergency vehicle training instruction. These witnesses testified regarding the accepted protocol for activation of emergency equipment of police vehicles. They stated that when making a determination whether to "overtake" a speeding vehicle and whether to activate a police vehicle's emergency lights and siren, police officers must take into account various factors including the time of day, road and vehicle conditions, the amount of traffic, and the safety of others.

VanMarter also presented the testimony of an accident investigator and a mechanical engineer. The accident investigator testified regarding the unobstructed line of sight that Hawthorne would have had before turning onto Chaparral Drive. The mechanical engineer testified regarding the force of the impact and the vehicle damage caused by the collision.

At the close of all the evidence, the parties submitted proposed jury instructions. As relevant to this appeal, the plaintiffs objected to Instructions 3 and 11, which are described below. The circuit court overruled these objections and instructed the jury accordingly.

7

The jury returned a verdict in favor of VanMarter. The circuit court denied the plaintiffs' motion to set aside the verdict and entered final judgment in accordance with the jury verdict. The plaintiffs appeal from the circuit court's judgment.

### III. Motion to Dismiss

Before addressing the various rulings and holdings assigned as error, we will consider VanMarter's motion to dismiss the Hawthorne Estate's appeal. VanMarter argues that the appeal filed on behalf of the Hawthorne Estate must be dismissed because the Administrators filed the appeal in a pro se capacity. VanMarter asserts that our holding in Kone v. Wilson, 272 Va. 59, 630 S.E.2d 744 (2006), that an administrator of an estate may not file an action in a pro se capacity, unequivocally bars the Administrators' appeal here.

In response, the Administrators argue that the holding in Kone is not applicable to this appeal because that holding does not address whether an administrator may file an appeal in this Court, as opposed to a complaint in a circuit court, in a pro se capacity. The Administrators alternatively contend that even if the holding in Kone is applicable to the filing of an appeal, the Administrators have a personal interest in the outcome of the present appeal to recover their fees and, therefore, were permitted to file their appeal in a

8

pro se capacity. Finally, the Administrators argue that even if they were prohibited from filing the appeal in a pro se capacity, the notice of appeal filed by Guthrie in this consolidated proceeding had the effect of perfecting the Administrators' appeal. We disagree with the Administrators' arguments.

We first observe that the notice of appeal filed by Guthrie did not perfect the Administrators' appeal. Although Rule 5:9(c) is permissive in nature, and allows one notice of appeal to be filed on behalf of all parties when two or more cases have been tried together, the plaintiffs in the present cases each filed separate notices of appeal, and Guthrie's notice of appeal did not state that it was being filed on behalf of the Hawthorne Estate. Thus, the record before us plainly shows that Guthrie's attorney was not acting on behalf of the Hawthorne Estate when he filed Guthrie's notice of appeal.

We also disagree with the Administrators' argument that our holding in <u>Kone</u> is distinguishable from the present case because that holding addressed a pro se filing in the circuit court, rather than in this Court. Our holding in <u>Kone</u> was based on the representative role of an administrator, not on the type of court in which the administrator's action was filed.

9

In Kone, we explained that the Virginia Wrongful Death Act, Code §§ 8.01-50 through -56, vests a right of action for wrongful death in a decedent's personal representative, but that the cause of action belongs to the decedent's beneficiaries. Id. at 62, 630 S.E.2d at 746. We held that an administrator of an estate acts as a surrogate for the beneficiaries of the estate and cannot file a cause of action in a pro se capacity, because the administrator is merely acting in a representative capacity for the true parties in interest. Id. at 62-63, 630 S.E.2d at 746.

Although a licensed attorney properly filed the present action in the Administrators' names in the circuit court, the notice of appeal filed in this Court by the Administrators stated that each was acting in a "pro se" capacity as a co-administrator of the Hawthorne Estate. Like the administrator in Kone, the Administrators in the present case can act only in a representative capacity for the beneficiaries of the Hawthorne Estate. Thus, because the Administrators were not the true parties in interest, they were not entitled to file the present appeal in a pro se capacity. See id. at 62-63, 630 S.E.2d at 746.

We find no merit in the Administrators' argument that they nevertheless were entitled to file their appeal in a pro se capacity because they have a personal interest in the

10

outcome of the appeal.  The Administrators did not become aggrieved parties in the case merely by virtue of their desire to recover the fees purportedly owed to them for serving as administrators of the Hawthorne Estate.[4]

Because our holding in Kone is controlling, we conclude that the Administrators did not have a right to file the appeal in a pro se capacity for a cause of action belonging to the Hawthorne Estate's beneficiaries.  See id. at 62-63, 630 S.E.2d at 746.  Accordingly, we will grant VanMarter's motion to dismiss the Administrators' appeal.

IV. Plea in Bar Asserting Sovereign Immunity

Guthrie argues that the circuit court erred when it refused to submit to the jury the factual question whether VanMarter was engaged in overtaking a speeding vehicle at the time of the collision.  Guthrie asserts that the circuit court improperly made a factual determination when the court concluded that the proffered testimony of the two witnesses would not have changed the outcome of the circuit court's sovereign immunity holding.

---

[4] There also is no merit in the Administrators' argument that Anthony was authorized to file this appeal as an attorney representing the Hawthorne Estate, because the record does not demonstrate that he filed the appeal in his capacity as a licensed attorney.

Guthrie argues that he had no obligation to bring the two witnesses to the circuit court's attention during the plea in bar hearing because VanMarter only asked the circuit court to determine whether an officer overtaking a speeding vehicle is entitled to sovereign immunity. Guthrie asserts that he was not required to raise the separate factual question whether the speeding vehicle in fact existed, and argues that this factual dispute should have been submitted at trial to the jury. Guthrie maintains that a jury presented with that testimony reasonably could have concluded that VanMarter was not apprehending a speeding vehicle and, thus, was liable for his acts of ordinary negligence. We disagree with Guthrie's arguments.

We first observe that the circuit court's ruling declining to reopen the record and reconsider its ruling on the plea in bar was a discretionary determination. The essence of any discretionary determination is the exercise of judgment. Only when the record does not fairly support the circuit court's exercise of its judgment will we say that an abuse of discretion has occurred. See Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009). Thus, we will not disturb the circuit court's judgment absent a clear abuse of that discretion. See Murphy v. Commonwealth, 246 Va. 136, 148, 431 S.E.2d 48, 55 (1993); Hechler Chevrolet,

12

Inc. v. General Motors Corp., Inc., 230 Va. 396, 403-04, 337 S.E.2d 744, 748-49 (1985).

A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery. Schmidt v. Household Fin. Corp., II, 276 Va. 108, 116, 661 S.E.2d 834, 838 (2008); Baker v. Poolservice Co., 272 Va. 677, 688, 636 S.E.2d 360, 366 (2006); Cooper Indus., Inc. v. Melendez, 260 Va. 578, 594, 537 S.E.2d 580, 590 (2000). The party asserting a plea in bar bears the burden of proof on the issue presented. Baker, 272 Va. at 688, 636 S.E.2d at 367; Cooper Indus., 260 Va. at 594, 537 S.E.2d at 590; Tomlin v. McKenzie, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996).

The issue raised by a plea in bar may be submitted to the circuit court for decision based on a discrete body of facts identified by the parties through their pleadings, or developed through the presentation of evidence supporting or opposing the plea. Kroger Co. v. Appalachian Power Co., 244 Va. 560, 562, 422 S.E.2d 757, 758 (1992); see Schmidt, 276 Va. at 112, 661 S.E.2d at 836; Niese v. City of Alexandria, 264 Va. 230, 233, 564 S.E.2d 127, 129 (2002). If the parties present evidence on the plea ore tenus, the circuit court's factual findings are accorded the weight of a jury finding and will not be disturbed on appeal unless they are plainly wrong or without evidentiary support. Jennings v. Kay Jennings

13

Family Ltd. P'ship, 275 Va. 594, 600, 659 S.E.2d 283, 287 (2008); Cooper Indus., 260 Va. at 595, 537 S.E.2d at 590.

If the facts underlying the plea in bar are contested, a party may demand that a jury decide the factual issues raised by the plea. See Code § 8.01-336(B); Bethel Inv. Co. v. City of Hampton, 272 Va. 765, 770, 636 S.E.2d 466, 470 (2006); Upper Occoquan Sewage Auth. v. Blake Constr. Co., Inc., 266 Va. 582, 585-86, 587 S.E.2d 721, 723 (2003); Kroger, 244 Va. at 562, 422 S.E.2d at 758. Conversely, if the facts are disputed and no demand for a jury is made, the "whole matter of law and fact" may be decided by the court. See Code § 8.01-336(B).

In the present case, the parties proceeded on the plea in bar as if the facts were uncontested. Guthrie neither informed the circuit court of the potential witnesses he had identified during discovery, nor did he request additional time to depose those witnesses. Moreover, Guthrie failed to request that a jury decide the factual issues presented by the plea in bar, agreed that the circuit court should decide those issues, and did not object when the circuit court made the factual determination that VanMarter was in fact attempting to overtake a speeding vehicle.

By submitting the entire decision on the plea in bar to the circuit court judge, Guthrie effectively agreed to have

14

the judge decide all legal and factual questions underlying the single issue whether sovereign immunity shielded VanMarter from Guthrie's allegations of ordinary negligence. See Kroger, 244 Va. at 562, 422 S.E.2d at 758. Thus, we hold that Guthrie waived his right to have the jury at trial decide the factual issues pertaining to the question of sovereign immunity.

Additionally, we note that the circuit court's decision declining to reopen the issues pertaining to its sovereign immunity holding fully reflected the function of the plea in bar, which is to narrow the litigation by resolving an issue that will determine whether a plaintiff may proceed to trial on a particular cause of action. See Schmidt, 276 Va. at 116, 661 S.E.2d at 838; Tomlin, 251 Va. at 480, 468 S.E.2d at 884. This function would have been undermined in the present case had the circuit court set aside its ruling and permitted Guthrie an opportunity to relitigate the issues already addressed without objection at the hearing on the plea in bar.

We also hold that the circuit court did not err in concluding that the testimony of the two witnesses failed to qualify as "after-discovered" evidence. This testimony was not "after-discovered," because Guthrie disclosed the identity of these witnesses before submitting the sovereign immunity issue to the circuit court and, therefore, could have

discovered the content of their testimony by exercising reasonable diligence. See Orndorff v. Commonwealth, 271 Va. 486, 502, 628 S.E.2d 344, 353 (2006); Odum v. Commonwealth, 225 Va. 123, 130-31, 301 S.E.2d 145, 149 (1983); Fulcher v. Whitlow, 208 Va. 34, 39, 155 S.E.2d 362, 366 (1967). Accordingly, we hold that the circuit court did not abuse its discretion in refusing to reopen its ruling on the plea in bar and allow the testimony of the two witnesses to be presented at trial, because Guthrie could have presented that testimony at the hearing on the plea in bar or have requested additional time to develop this evidence at that hearing.

## V. Venue

We next consider Guthrie's argument that the circuit court abused its discretion in granting VanMarter's motion to transfer venue. VanMarter argued that the City of Roanoke was an improper venue because he had relocated his residence from the City to Roanoke County before this action was filed. In response, Guthrie asserted that the City of Roanoke was a permissible venue under Code § 8.01-262 because VanMarter retained a residence there and conducted "substantial business activity" in the City.

At a hearing on the motion to transfer venue, VanMarter testified that he lived with his girlfriend, Melissa Alderman, on Springtree Drive in the City of Roanoke until July 2005,

16

when VanMarter moved to the County.  Alderman testified that VanMarter moved from her home in the summer of 2005.

During cross-examination, VanMarter conceded that after he relocated to the County, he retained a key to the Springtree Drive residence and stored certain furniture and personal items there.  VanMarter testified that he completed a change of address form with the United States Postal Service, but that some of his mail still was delivered to the Springtree Drive address after this litigation was initiated.  VanMarter also stated that in October 2005, his Police Department paycheck and his voter registration continued to list the Springtree Drive house as his address.

VanMarter further testified on cross-examination that he drives through certain portions of Roanoke City on his way to work, and that he travels into the City more than once a month to shop, to attend movies, and to dine at City restaurants.  He also testified that at the time this action was filed, he was enrolled in classes at Virginia Western Community College in the City of Roanoke and had been taking classes for about six months.

After considering this evidence and the arguments of counsel, the circuit court held that VanMarter had proved that he resided in Roanoke County at the time this action was filed.  The circuit court further held that VanMarter's

17

conduct in the City of Roanoke did not constitute "substantial business activity" as contemplated by Code § 8.01-262(3).

On appeal, Guthrie asserts that VanMarter failed to present sufficient evidence to establish that the venue chosen by the plaintiffs was improper. Guthrie argues that VanMarter failed to prove that he moved to Roanoke County before the date the action was initiated. Guthrie further argues that VanMarter conducted substantial business activity in the City of Roanoke and, therefore, that the circuit court abused its discretion in transferring venue to Roanoke County. We disagree with Guthrie's arguments.

We observe that Code § 8.01-262 provides in relevant part that an action may be filed "[w]herein the defendant resides" or "[w]herein the defendant regularly conducts substantial business activity." Code § 8.01-262(1), (3). The party objecting to venue has the burden to establish that the venue chosen by the plaintiff was improper. Barnett v. Kite, 271 Va. 65, 69, 624 S.E.2d 52, 54 (2006); Meyer v. Brown, 256 Va. 53, 57, 500 S.E.2d 807, 809 (1998). The determination whether the selected venue is proper is committed to the sound discretion of the circuit court. Barnett, 271 Va. at 69, 624 S.E.2d at 54; Meyer, 256 Va. at 56-57, 500 S.E.2d at 809.

We hold that the circuit court did not abuse its discretion in granting VanMarter's motion to change venue.

18

The record supports the circuit court's conclusion that VanMarter lived in Roanoke County at the time the suit was filed in the fall of 2005. Alderman corroborated VanMarter's testimony that in the summer of 2005, he moved out of her home located in the City of Roanoke. VanMarter also completed a change of address form in order to receive mail at his home in Roanoke County. The fact that VanMarter continued to receive some mail at Alderman's home, retained a key to her home, and stored personal property there did not contradict his testimony that he resided in Roanoke County before Guthrie filed the present action.

The record also supports the circuit court's conclusion that VanMarter did not regularly conduct substantial business activity in the City of Roanoke. Although VanMarter testified about his enrollment in classes at a community college in the City of Roanoke, the record does not provide any further details about these classes and does not indicate that they were related to his work as a police officer.

The evidence also showed that VanMarter entered the City of Roanoke to pursue personal and recreational interests, including dining at restaurants, shopping, and attending movies. VanMarter also drove on roads located in the City on his way to work as a police officer in Roanoke County.

However, these transient activities, considered as a whole, do not constitute substantial business activity.

Nevertheless, Guthrie asserts that he satisfied the test of conducting substantial business activity in the City because, under a certain Roanoke City ordinance, VanMarter was authorized to perform some law enforcement functions in the City. We do not consider this argument, however, because Guthrie did not raise it before the circuit court. Guthrie's failure to do so prohibits us from considering this argument for the first time on appeal. See Rule 5:25; Green v. Va. State Bar, 278 Va. 162, 178, 677 S.E.2d 227, 235 (2009); Graham v. Cook, 278 Va. 233, 248, 682 S.E.2d 535, 543 (2009). Therefore, we hold that the record before us supports the circuit court's discretionary decision transferring venue to Roanoke County.

## VI. Jurors

We next consider Guthrie's arguments related to the circuit court's seating of certain jurors. At the beginning of the voir dire, the circuit court asked the potential jurors whether they knew of any reason that they could not give a fair and impartial trial to the parties based solely on the law and the evidence. All the potential jurors responded, "No." The court also asked whether the veniremen were aware

20

of any bias or prejudice for or against any of the parties, to which they all responded, "No."

When questioned by Guthrie's counsel about whether any potential jurors had any involvement with the law firm representing VanMarter, Juror Tuckwiller stated that his sister worked for that firm. Tuckwiller explained that he does not discuss his sister's work with her and that his relationship with her would not make it "difficult" for him to "decide this case."

Regarding whether any of the potential jurors worked with or came into contact with police officers, Juror Harris stated that she attends church weekly with two police officers. In response to a question by counsel, Juror Harris stated that she did not know whether it would "bother" her to serve as a juror in case against a police officer, and that "[m]aybe [she] shouldn't [sit on the case]." When questioned further, Juror Harris stated that "it might" be a "little difficult" for her to serve as a juror and that if a verdict were rendered against the police officer it would cause her "some concern."

Juror Draper stated that she "probably" agreed with Juror Harris, but also stated that she did not "like to do anything wrong." Earlier during voir dire, Juror Draper had stated that she "[didn't] think" it would be difficult to be involved

in the case and that she did not have any "bias [sic] opinion" about the case despite her familial relationships with police officers.

In response to questions about whether potential jurors believed "it may be unfair to blame" VanMarter for the death of Hawthorne, Juror Blankenship stated that if VanMarter "was doing his job, I would have a problem with finding him personally liable." After Jurors Harris and Hodges stated that they agreed with Blankenship's statement, Juror Blankenship stated that her position might change if it were proved that VanMarter was negligent in performing his job.

Juror Harris responded to counsel's question about whether the plaintiff's burden of proof was fair and stated that she "wish[ed] it were more [than 51 percent], but if that is the law [sic]." Juror Draper stated that if a person were going to be "proven guilty" it "[would have] to be 100 percent, I would have to feel it in my mind," but also stated that "if that is the law[,] that is the law."

Guthrie's counsel asked whether any of the potential jurors believed that they would not bring a lawsuit against a police officer even if they felt they had a reason to do so. The potential jurors all responded, "No."

Guthrie moved to strike Jurors Draper, Harris, Blankenship, Tuckwiller and Hodges (the five jurors) for

22

cause. The circuit court denied the motion. The circuit court stated that while counsel had questioned jurors regarding whether they would have a "hard time" serving as jurors, the court had observed the panel and determined that they would be fair and impartial.

Guthrie requested permission to conduct individual voir dire outside the presence of the rest of the jury. The circuit court refused this request and also refused to permit Guthrie to continue his voir dire. The court noted that the voir dire had lasted longer than any felony case over which the judge had presided.

On appeal, Guthrie argues that the "totality" of the comments made by the five jurors demonstrated that they were not impartial or free of bias and that, therefore, the circuit court should have granted Guthrie's motion to strike them for cause. In the alternative, Guthrie contends that the circuit court abused its discretion in denying his request to question the five jurors outside the presence of the other jurors and to continue voir dire in order to clarify whether the five jurors should have been disqualified. We disagree with Guthrie's arguments.

Civil litigants are entitled to a fair and impartial trial by jury consisting of people who "stand indifferent in the cause." Code § 8.01-358. A circuit court has wide

23

latitude in seating jurors because the court has a superior ability to hear the responses and observe the body language of each member of the venire.  Roberts v. CSX Transp., Inc., 279 Va. 111, 115, 688 S.E.2d 178, 180 (2010); Juniper v. Commonwealth, 271 Va. 362, 400, 626 S.E.2d 383, 408 (2006); Green v. Commonwealth, 262 Va. 115, 116, 546 S.E.2d 446, 451 (2001).  Therefore, we have stated that a circuit court's ruling on a motion to strike a juror for cause will not be disturbed on appeal unless it constitutes manifest error. Roberts, 279 Va. at 116, 688 S.E.2d at 181; Juniper, 271 Va. at 401, 626 S.E.2d at 408; Barrett v. Commonwealth, 262 Va. 823, 826, 553 S.E.2d 731, 732 (2001); Green v. Commonwealth, 262 Va. at 116, 546 S.E.2d at 451; Cantrell v. Crews, 259 Va. 47, 50, 523 S.E.2d 502, 504 (2000).

The circuit court is required to provide each party a full and fair opportunity to determine whether prospective jurors "stand indifferent in the cause."  LeVasseur v. Commonwealth, 225 Va. 564, 581, 304 S.E.2d 644, 653 (1983); see Roberts, 279 Va. at 116, 688 S.E.2d at 181.  However, the circuit court retains the discretion to determine whether the parties have had sufficient opportunity to question the prospective jurors.  Juniper, 271 Va. at 396, 626 S.E.2d at 405; LeVasseur, 225 Va. at 581, 304 S.E.2d at 653.  Also, the circuit court retains the discretion to determine whether the

24

parties should be permitted to question prospective jurors outside the presence of the others.  Tuggle v. Commonwealth, 228 Va. 493, 505, 323 S.E.2d 539, 546 (1984).  Finally, when this Court reviews a circuit court's ruling on the seating of a juror, we consider the voir dire of that juror as a whole, and do not consider the juror's isolated statements.  Juniper, 271 Va. at 401, 626 S.E.2d at 408; Jackson v. Commonwealth, 267 Va. 178, 191, 590 S.E. 2d 520, 527 (2004); Green v. Commonwealth, 262 Va. at 116, 546 S.E.2d at 451.

We hold that when viewed in its entirety, the voir dire of each of the five jurors demonstrated that they were able to serve impartially in the case.  Juror Tuckwiller, whose sister worked for the law firm representing VanMarter, expressed unequivocally that this relationship would not interfere with his ability to serve as an impartial juror.  Juror Blankenship initially stated that she might have difficulty rendering a verdict against a police officer but quickly qualified her statement and reconsidered her position.  Juror Hodges simply stated that she agreed with Juror Blankenship's initial response and did not state that she was unable to serve impartially.

Jurors Harris and Draper, who had familial and personal relationships with police officers, provided responses that were equivocal and tentative.  Juror Harris stated that

25

"[m]aybe" she should not serve as a juror, that it "might" be "a little difficult" to serve as a juror, and that she would have "some concern" in rendering a verdict against VanMarter. Similarly, Juror Draper stated that she "probably" felt similarly to Juror Harris, but earlier had stated clearly that she held no biased opinions in favor of police officers.

With regard to the burden of proof, Jurors Harris and Draper indicated that they would follow the law even if they disagreed with it. Notably, none of the statements by Jurors Harris or Draper indicated that they would be unwilling or unable to follow the instructions of the court.

We hold that the circuit court did not abuse its discretion in refusing to permit Guthrie to continue questioning the five jurors or to question them outside the presence of the other jurors. As we have stated, it is within the court's discretion to determine whether counsel has had adequate time to question jurors and whether to permit individual voir dire. In this case, the circuit court noted that the questioning by counsel was extensive and exhaustive and that individual voir dire was not necessary to determine that the jurors could serve impartially. From our review of the entire voir dire, we conclude that the record supports the circuit court's determination. Therefore, we hold that the circuit court did not commit manifest error in refusing to

strike the five jurors for cause.  See Roberts, 279 Va. at

116, 688 S.E.2d at 181; Juniper, 271 Va. at 401, 626 S.E.2d at

408; Cantrell v. Crews, 259 Va. 47, 50, 523 S.E.2d 502, 504

(2000); Barrett v. Commonwealth, 262 Va. 823, 826, 553 S.E.2d

731, 732 (2001).

VII. Jury Instructions

We next consider Guthrie's contention that the circuit

court erred in overruling his objections to Instructions 3 and

11.  Instruction 3 stated: "The driver of an emergency vehicle

may exceed the speed limit provided he is not grossly

negligent."  Guthrie objected to this instruction on the basis

that it failed to inform the jury that police officers are

required to activate the emergency lights of their vehicles

when driving in excess of the speed limit.

The circuit ruled that Instruction 3, when read together

with Instruction 4, accurately reflected the law.  Instruction

4 provided, in part: "The driver of a law enforcement vehicle

may disregard speed limits, while having due regard for safety

of persons and property, only when the operator of such

vehicle displays a flashing emergency light or lights, and

sounds a siren."

Instruction 11 provided: "Immediately before entering a

highway from a private driveway, the driver of a vehicle has a

duty to stop and use ordinary care to yield to any vehicle

27

that is so near the driveway that the driver cannot safely enter the highway." Guthrie objected to this instruction on the ground that it did not inform the jury that a driver traveling in excess of the speed limit forfeits the right of way that he ordinarily enjoys when driving on a main roadway. Guthrie also offered proposed Instruction C, which the circuit court refused, that addressed circumstances under which a driver forfeits his right of way.

The circuit court overruled Guthrie's objection to Instruction 11, stating that this Instruction, when read in conjunction with Instruction 10, gave a "full and fair" statement of the law. Instruction 10 stated, in relevant part: "Hawthorne had a right to assume that other drivers on Chaparral Drive, including [VanMarter], would use ordinary care until she realized, or in the exercise of ordinary care should have realized, that [VanMarter] was not doing so."

On appeal, Guthrie observes that under Code § 46.2-920(B), drivers of emergency vehicles may exceed the speed limit only if their vehicles display emergency lights or sound a siren. Guthrie contends that Instruction 3 misstated the law and permitted the jurors incorrectly to conclude that VanMarter lawfully could have exceeded the speed limit without activating his vehicle's emergency lights and sirens.

28

Guthrie further argues that based on the evidence at trial, the jury could have concluded that VanMarter was traveling in excess of the speed limit and, thus, had forfeited his right of way under Code § 46.2-823.  Guthrie asserts that Instruction 11 should have included an explanation of such forfeiture of the right of way, and that Instruction 10 did not remedy this error because it too was silent on that subject.  Guthrie argues that, at best, the two instructions were inconsistent.  We disagree with Guthrie's arguments.

The purpose of jury instructions is to inform the jury fully and fairly about the law applicable to the particular facts of a case.  Castle v. Lester, 272 Va. 591, 605, 636 S.E.2d 342, 349 (2006); Honsinger v. Egan, 266 Va. 269, 274, 585 S.E.2d 597, 600 (2003); H. W. Miller Trucking Co. v. Flood, 203 Va. 934, 936, 128 S.E.2d 437, 439 (1962).  In reviewing the content of jury instructions, this Court's responsibility is to see that the law has been clearly and accurately stated, and that the instructions cover all issues fairly raised by the evidence.  Hancock-Underwood v. Knight, 277 Va. 127, 131, 670 S.E.2d 720, 722 (2009); Molina v. Commonwealth, 272 Va. 666, 671, 636 S.E.2d 470, 473 (2006); Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982).

29

We read the granted jury instructions together and consider them as a whole. Supervalu, Inc. v. Johnson, 276 Va. 356, 366, 666 S.E.2d 335, 341 (2008); Miller Trucking, 203 Va. at 937, 128 S.E.2d at 440. The determination whether a jury instruction accurately states the relevant law is a question of law that we review de novo. Hancock-Underwood, 277 Va. at 131, 670 S.E.2d at 722.

In the present case, Instruction 3 correctly informed the jury that VanMarter was permitted to disregard the speed limit to the extent that he was not grossly negligent in his actions. While Instruction 3 did not include the qualification that emergency vehicles are required to display activated lights and sirens when being operated at speeds in excess of the posted speed limit, Instruction 3 did not misstate the law. Furthermore, Instruction 4 unequivocally addressed Guthrie's concern that the jury be instructed about the conditions under which police officers may disregard speed limits, including that they must activate their police vehicle's emergency lights and siren.

Instruction 11 also provided the jury with a correct statement of law and informed the jury that a driver always has a duty to use ordinary care. Instruction 10 informed the jury that a driver initially may assume that other drivers also are acting with ordinary care. The issue of forfeiture

of right of way presented a legal issue distinct from the duty of a driver to exercise ordinary care and, thus, the circuit court did not err in refusing to add that principle to Instruction 11.

In addition, we note that the circuit court's decision to refuse proposed Instruction C, which addressed the forfeiture of right of way, has not been assigned as error in this case. Accordingly, we hold that when all the jury instructions are read together, the jury properly was instructed on the issues addressed in Instructions 3 and 11 and, thus, the circuit court did not err in granting those instructions.

## VIII. Conclusion

For these reasons, we will dismiss the appeal of the Hawthorne Estate, and will affirm the circuit court's judgment in favor of VanMarter in Guthrie's appeal.

Record No. 091127 – Dismissed.
Record No. 091156 — Affirmed.